# CHARLESTON.

45 750
49 745

45 750
53 291

45 750
e56 12
f57 86
e57 87

45 750
c 60 69
60 73

### DENT *v*. BOARD OF COMMISSIONERS OF TAYLOR COUNTY.

(ENGLISH, JUDGE, *dissenting*.)

(DENT, JUDGE, *absent*.)

Submitted December 31, 1898—Decided December 31, 1898.

1. MANDAMUS—*Election Canvasser—Recount—Certificates of Election.*

    A *mandamus* will not issue to compel an election canvasser to assent to and certify the result of a recount of ballots as found by another canvasser, though both were present at it, if they disagree as to such result, and the unwilling one says it is not an adequate, correct, true recount. (By two judges.) (p. 756).

2. ELECTIONS BY THE PEOPLE—*Certificates of Election—Evidence—Ballots.*

    Certificates of the result of an election made by the commissioner at the precincts are *prima facie* evidence of such result. The ballots, if identified as the same cast, are primary and higher evidence; but, in order to continue the ballots controlling as evidence, it must appear that they have been preserved in the manner and by the officers prescribed in the statute, and that while in such custody they have not been so exposed to the reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with. If there has been an opportunity for tampering with ballots, they lose their character as primary evidence. McCrary Elect. s. 443. (By two judges.) (p. 757.)

3. ELECTIONS BY THE PEOPLE— *Ballots—Evidence—Certificates of Election.*

    If there is evidence tending to show that ballots are not sealed up after being counted by the precinct election officers, the ballots, on recount, are not the best evidence, but the result will be governed by the precinct certificates, where the certificates and the recount differ in result. (By two judges.) (p. 758).

4. MANDAMUS.

A *mandamus* cannot be brought against an officer in his official capacity after his term of office has ended.   13 Enc. Pl. & Prac. 661.   (By two judges )   (p. 759).

Application by W. R. D. Dent for a writ of *mandamus* to the board of commissioners of Taylor county.

*Dismissed.*

A. N. CAMPBELL and JOHN H. HOLT, for petitioner.

JOHN W. MASON, GEORGE W. McCLINTIC, JOSEPH GAINES, and EDGAR P. RUCKER, for respondent.

BRANNON, PRESIDENT :

William R. D. Dent and Humphrey F. Brohard were competing candidates at the election in November, 1898, to represent Taylor County in the House of Delegates.  The board of canvassers found upon the returns of the officers of election at the various precincts that Brohard received one thousand six hundred and seven votes and Dent one thousand five hundred and twenty-six votes, electing Brohard by eighty-one majority.  Dent demanding a recount, a recount claimed by Dent as complete showed that Dent received one thousand five hundred and fifty-eight votes, and Brohard one thousand five hundred and twenty-one votes, giving Dent a majority of thirty-seven.  There being a vacancy in the membership of the county court, the canvassing board was composed of two commissioners, W. J. Curry and J. K. Means.  Curry signed a statement and declaration upon the book called "Election Record" that Dent was elected, and he signed and delivered to Dent also a certificate of his election.  Means did not sign said entry on the election record, but refused to do so, and refused to sign Dent's certificate of election, and on the contrary, caused to be entered of record in the office of the county court—if that be material—a declaration that Dent received one thousand five hundred and twenty-six votes and Brohard one thousand six hundred and seven, as shown by certificates of the precinct officers; and that he declined to unite with Curry in declaring such result as Curry found by such recount, as he was not satisfied that such result was correct; and Means issued and delivered a certificate

of Brohard's election. Dent asks of this Court a *mandamus* to compel said Curry and Means, as composing said board of canvassers, to declare the result as ascertained by said recount, and to sign certificates thereof, and transmit one to William M. O. Dawson, Secretary of State, and one to each of said candidates. An alternative *mandamus* having been awarded, Means filed a return and Brohard has intervened, and filed a return to said alternative writ, and plaintiff, Dent, has demurred thereto.

I remark that Dent's petition does not seek a *mandamus* to review the action of the canvassers for error in counting ballots, and to have this Court recount ballots and declare the result, and thus the case does not seem to me to raise the very grave question which would then arise, as to the jurisdiction of the judiciary to count ballots, and declare the result of an election for the House of Delegates, in view of the provision of the Constitution that each branch of the legislature shall be the judge of the election and returns of its members. The plaintiff's case is based solely on the theory that there has been a complete recount of ballots electing him, and that he is entitled to a declaration and certificate thereof by said canvassers to give him a *prima facie* title to the office. I think there are three reasons against awarding a peremptory *mandamus*. One reason is that there is no finished, legal recount, by which both commissioners found a final result, so as, in law, to call for the signature of both commissioners to the declaration and certificate. The statute says that when the canvassers canvass the returns, whether with or without a recount, they shall enter the result in the election record, and deliver certificates thereof. This record entry and certificate must, in the words of the act, be signed "by the board or a majority of them." This record entry has not been signed. It is urged that Means' return admits that there was a recount, showning Dent elected, and that upon it a *mandamus* should go. The return cannot receive such construction, taken as a whole. That return does say that the canvassers opened the packages of ballots after they had been sealed up upon the first count, and that they were read by Curry, and the tally kept by the clerk, and that according to the report of the clerk, Dent

received one thousand five hundred and fifty-eight votes and Brohard one thousand five hundred and twenty-one, but that Means did not agree with Curry as to the correctness of said recount, and that Means refused, and still refuses, to make a record of the same, and that thereupon Curry, of his own motion, in the absence and without the knowledge, consent, or concurrence of Means, made the record in the election record purporting to be the record of said recount; that Curry claimed that a true and complete recount had been made, and desired to record it, but that he (Means) was of opinion that a full and complete recount had not been made, and he refused, for that reason, to record the same. Said return says: That the recount began at 9 o'clock A. M., of November 15th, and continued until 3 o'clock next morning, with the exception of one hour for dinner and one hour for supper; and that the board handled and considered over three thousand one hundred and twenty-nine ballots, all being considered as to three offices, and a portion as to four. Two hours were consumed by counsel in argument and other matters incident to the work. That the inspection and count were hurriedly made, and under such circumstances that he (Means) was not and is not certain of the accuracy of the recount. That he was not well, and during the greater part of the recount was physically exhausted. That said Means found that said recount showed in one precinct a change greater than one vote in four from the result as determined by the commissioners of election at that precinct, and very great changes at other precincts. That he believed and says that a more careful inspection of the ballots will determine their genuineness and the correctness of the canvassers in reading them, and of the clerk in reporting the count, and was necessary to determine accurately, and do justice to the parties. That for these reasons he did not believe that an adequate, full and just recount had been made; and that such recount had not been made; and that said recount should not be recorded, and certificate issued, until an opportunity is given the canvassers to require the attendance of the commissioners, poll clerks, and others present at said election to testify respecting the same, and especially to ascertain the

genuineness of the ballots; and that no such opportunity had been given, and no such witness had been examined touching such questions.    That the ballots at precinct No. 5, Grafton district, were not sealed by the commissioners as required by law, nor the names of the commissioners written upon the envelope containing them, as required by law, but that they were only partially inclosed in a torn envelope, not sealed, but only tied about with common twine, and neither sealed nor signed by the commissioners.    That no sufficient and proper inspection or recount of the ballots at that precinct, and others cast in said election, was had.    The return further says that: "Immediately after said Curry had the record of said partial recount, made as aforesaid, entered upon the record book, he, the said Curry, absented himself from Taylor County, left the State, and remained absent for more than a month, and until the day respondent's successor entered into office in the place of respondent; that during this time respondent was unable to make a full and complete canvass as to said recount, for the reason that he and said Curry composed the said board, and, in the absence of said Curry, no quorum could be secured; that during all this time, up to his retirement from office on December 19, 1898, when his successor went into office, respondent was exceedingly anxious to complete said canvass, and ascertain and declare the true result of said election."    Said return further states that at the time of making said "partial recount he became convinced that a more careful examination of said ballots should be had for the purpose of determining their genuineness"    Brohard alleges that he and his counsel were refused an inspection of the ballots on said recount.

I have stated enough of the contents of Mean's return to show that it cannot be construed as admitting, but must be construed as denying, that a recount, finished and completed, existed, so as to warrant a *mandamus* to compel Means to approve it, and sign a certificate thereof.    If the application were to compel the commissioners to reconvene and recount, that would present another question; but here it is claimed that there was a perfect recount, and that it only remains to execute it.    In no sense can we re-

gard this recount as so completed. One canvasser says that it is correct, and satisfies his judgment and conscience; the other says it is not correct, and does not satisfy his judgment and conscience. Shall he be compelled to give an assent under such circumstances? It may be asked, shall a canvasser be allowed to withhold a certificate of election by merely saying that he is not satisfied with the result of a recount? If it clearly appeared to the Court that he was wrong in so refusing, the Court would compel him to accede; but we have no ballots before us, if we lawfully could have for this office, and we cannot say that Means is willfully acting against his duty under oath when he tells us under oath that his judgment and conscience were not satisfied, and he was present in the county, ready to make further canvass and inspection of the ballots. I know that the duty of canvassers is, as to the general function of making a canvass, ministerial; but within the pale of that action their action is in some respect *quasi* judicial, calling upon them to exercise judgment and discretion. Thus they act judicially in determining that the ballots, poll books, and certificates of the election returns are genuine or altered. *Brazie* v. *Commissioners,* 25 W. Va. 213. I have no hesitation in saying that if a canvasser, before he signs a result, becomes dissatisfied, and desires a review and re-examination and recount of the ballots, he has a right to have it. He has a discretion in making up his mind. Though a candidate has no right to a second recount, surely a member of the board has, in order to finally make up his mind. When his return states that upon a recount it does not find the true result, and that he did not assent to it, it seems to me that ends it; and he will no more be compelled to sign than would a judge be compelled to sign a bill of exceptions by *mandamus* when he says that it does not truly state the facts. I repeat that if we had the ballots before us, and could see that Means was corrupt, or partisan, or arbitrary in refusing his assent, we might, perhaps, compel him to give his assent; but, without such ballots, how can we say whether his hesitation is proper or improper? How can we say that his discretion has not been properly exercised? How can we deny him the exercise of judgment and discretion of a pub-

lic officer under oath? If we follow JUDGE ENGLISH in *Marcum* v. *Commissioners*, 42 W. Va. 273, (26 S. E. 281), we must refuse the *mandamus* in this case. He stated that the writ does not lie to compel the exercise of discretion by an inferior tribunal in a particular way; that, while it will be compelled to act in some way in the matter (that is, compelled to action), yet it will not be compelled to act in a particular way, where that manner involves the right to exercise discretion,—compelled to act, but not directed how to act. He said that, as the ballot commissioners of Putnam County had acted by putting one candidate on the ballots, yet they could not be compelled to put a different candidate on, though he was the legal nominee of the party. Apply JUDGE ENGLISH's doctrine in this case. Both canvassers, Curry and Means, did act, one in one way, the other in another; one received the ballots as telling the result, the other received the precinct returns as evidence of the result; one declared Dent elected, the other declared Brohard elected. It is now proposed to make Means declare Dent elected; that is to exercise his discretion and judgment in a particular way, contrary to the principles stated by JUDGE ENGLISH. Those principles are sustained by law, as a general proposition. In that case the majority of the Court held that under chapter 25, Acts 1893, *mandamus* could be used with the same effect as *certiorari* in reviewing action of officers under the election laws, and that the writ had wider scope therein than under the common law as expounded by JUDGE ENGLISH. And so I say now, in matters of election, when *mandamus* is used to review the action of election officers, and to reverse them for error, it is efficacious even in matters where those officers are vested with discretion; but that is because of that statute, and is not at common law. But note that this *mandamus* does not seek to review the work of these canvassers, does not bring before us the ballots, that we may see whether the action of one or the other canvasser is right. On the contrary, it assumes the recount as made, and asks us to compel Means to approve it when he disapproves it, and his action and judgment were contrary to it; thus asking us to compel his discretion in a certain direction. The case thus falls, not under that statute, but under the common law

as laid down by Judge English.  In declaring the result on the mere certificates from the precincts, canvassers act purely ministerially, and, but for the statute allowing a recount, they could not go behind those certificates. McCrary Elect. s. 227.  And upon a recount I have heard it suggested that the character of the function changes, and that the board becomes a court with judicial powers, having additional discretion, and bound to exercise judgment in some matters; for instance, to construe ballots, and say for whom they were cast, or whether the ballot is void or not.  If this doctrine be true, the case is clearer against a *mandamus*.  Whether still canvassers or not, a mere ministerial body or not, their action involves discretion beyond what it does when acting only on precinct certificates.  I conclude, therefore, that, in the absence of a complete recount, joined in by both commissioners as final, a *mandamus* cannot issue.

I now give another reason against awarding a *mandamus*.  It is undisputed that at two precincts, casting hundreds of votes, the ballots were not sealed up in closed envelopes, with the names of the commissioners written across the seal.  When the commissioners went to put the ballots in the envelopes, the envelopes were torn half way down or more, so that they could not be sealed, and so that the officers could not write their names upon them, and were merely closed with twine strings tied about them, and thus transmitted by the hands of individuals to the clerk's office, where they remained in the ballot boxes for for some days, until the canvassers met.  Now, I disclaim utterly any imputation upon anybody of tampering with or altering these ballots.  But this I state as a legal proposition; that, as evidence before that board of canvassers, the certificates made at the precincts were *prima facie* evidence of the result, and good until shown to be wrong. These certificates are made in the presence of numerous election officers of different parties eyeing the count, and that with scarcely any motive for wrong, and they are likely to tell the truth.  The burden is on him who denies their truth to show that they are wrong.  6 Am. & Eng. Enc. Law. 335; McCrary, Elect. s. 445; Cooley, Const. Lim. 788.  The ballots themselves are the highest evidence of

the result, when their identity as cast is established. Mc-
Crary, Elect. s. 443; *Hartman* v. *Young*, (Or.) 20 Pac. 17.
But, if those ballots have not been preserved with the scru-
pulous care and in the manner directed by law, they lose
their force as evidence of the result, and do not overthrow
the precinct returns. "Where the ballots are preserved
properly, so that they may be recounted by the order of
court, they will govern, when there is a difference between
them and the returns. But this should never be allowed
unless the recount is made under such circumstances that
it will be presumed to be more accurate than the official
count, or where the ballots have been so kept that there is
no danger that they have been tampered with." 6 Am. &
Eng. Enc. Law, 335. "If there is evidence tending to
show that the ballots are not sealed up after being counted
by the board of canvassers,    *    *    *    the ballots,
on a recount by the board of supervisors, are not the best
evidence, but the court may adopt the result arrived at by
the board of canvassers." *People* v. *Burden*, 45 Cal. 241.
"If they have not been kept or protected with that zealous
care which the statute contemplates, or so as to preclude
opportunity for intermeddling with them, they are the
weakest and most unreliable evidence." *Hartman* v. *Young*,
*supra.* "If the ballots have not been kept as required by
law, and surrounded by such security as the law has pre-
scribed with a view to their safe preservation as the best
evidence of the election, it would seem that they should not
be received in evidence at all." Cooley, Const. Lim. 625.
This doctrine is abundantly supported. *Hartman* v. *Young*,
*supra; Quinn* v. *Lattimore*, 120 N. C. 426, (26 S. E. 638);
*Andrews* v. *Probate Judge*, 74 Mich. 278; (41 N. W. 923);
McCrary Elect. s. 443, citing *Hudson* v. *Solomon*, 19 Kan.
177; *Martin* v. *Miles*, 40 Neb. 135, (58 N. W. 732). Paine,
Elect. s. 776, says that, "before courts or legislative bodies
should receive the result of recounts, there must be abso-
lute proof that the ballots have been safely kept, and that
they are the identical ones used at the election," and that
not until this is proved beyond all reasonable doubt can
force to be given to the recount. JUDGE ENGLISH, in an
opinion concurred in by JUDGE DENT, in a case where there
was no whisper that the ballots were not the true ones

cast, held that when they were not sealed up they could not be counted. *Snodgrass* v. *Wetzel Co. Ct.*, (29 S. E. 1036); 44 W. Va., 56.    He said that the law did not intend that even the clerk should have access to ballots required by law to be returned in a sealed package, properly endorsed, until such package was opened by the canvassers. But there was the precinct certificate, showing the same result as the ballots, while here they differ.    The certificates prevail.    I do not mean to say that there was any wrong touching these ballots, though the returns charge it.    It was only a question before the board as to the force of two instruments of evidence, one being the ballots, the other the precinct returns; and I am bound to hold, under the principles just stated, and that the precinct returns prevail in law over the ballots, and, instead of entitling Dent to the certificate, would give it to Brohard.    Then how can we compel Means to declare Dent elected upon the strength of the recount that was made, thus giving superior weight to the ballots over the certificates?

There is another reason against the award of a *mandamus.*    When the petition for it was presented, Means had ceased to be a commissioner of the county court by expiration of his term.    "A writ of *mandamus* cannot be brought against an officer in his official capacity after his term of office has ended."    13 Enc. Pl. & Prac. 661; High, Extr. Rem. s. 441; *Stock Co.* v. *Smith*, 165 U. S. 28, (17 Sup. Ct. 225.)    If there was a completed recount, as spread upon the record and signed by Curry, the *mandamus* should have been against the commissioners in office at its date, as the county commissioners are a continuous body, and nothing remained but to sign the result of the recount, if it had been in fact complete, as it in fact was not, under the circumstances developed in this case.    *Alderson* v. *Commissioners*, 32 W. Va. 454, (9 S. E. 863.)    Judge McWhorter concurs herein.    The alternative *mandamus* is dismissed.

English, Judge (*dissenting*):

At the late election, W. R. D. Dent and Humphrey F. Brohard were opposing candidates for the House of Delegates from the county of Taylor.    At the time the returns of said election came in, W. J. Curry and J. K. Means were

the only commissioners of the county court of said county, and as such were *ex officio* the board of canvassers, whose duty it was to canvass the returns of said election. In pursuance of the duty imposed upon them by statute, they proceeded to count the vote, and entered the same upon their record, and ascertained that at said election said Dent received one thousand five hundred and twenty-six votes and said Brohard received one thousand six hundred and seven votes for said office, the majority in favor of said Brohard being eighty-one votes; and thereupon said W. R. D. Dent demanded a recount of the ballots returned, which was proceeded with in the presence of counsel for the respective parties and various witnesses, and resulted in ascertaining that said Dent received one thousand five hundred and fifty-eight votes and said Brohard one thousand five hundred and twenty-one votes, finding the majority in favor of Dent to be thirty-seven. When the recount was completed, J. K. Means left the room where the recount was carried on, and W. J. Curry proceeded to record the result on the election record, as required by statute, and sign the same, and also signed a separate certificate of the result of the election in said county for each of the offices to be filled, including the House of Delegates. Said J. K. Means did not return to the place where said recount was made, and subsequently declined to sign the record of the result which had been signed by said Curry. Subsequently said Means claimed that he was not satisfied with the result of said recount, refused to sign the certificate of the result entered on the election record by said Curry, and caused to be entered on said election record a declaration that said Dent received one thousand five hundred and twenty-six votes and Brohard one thousand six hundred and seven, as shown by the certificate of the returns from the various precincts, and signed a certificate of said Brohard's election to said office; thus utterly ignoring and disregarding the result ascertained by the recount demanded by Dent. Thereupon said Dent applied to a judge of this Court for a *mandamus nisi* to compel said commissioners Curry and Means to declare the result as ascertained by said recount, and to sign certificates thereof, and dispose of them as required by statute. A *mandamas nisi* having been awarded,

said Means and Brohard filed returns to said writ, and said Dent demurred thereto. On the 31st day of December, 1898, the case was heard, and the above opinion handed down, in which I cannot concur, for the following reasons: First. When the legislature, in section 68, of chapter 3 of the Code, provided that "after canvassing the returns of the election, the board should upon the demand of any candidate voted for at such election, open and examine any one or more of the sealed packages of ballots and recount the same," and that "when they had made their certificates and declared the result as thereafter provided, stating what shall be done with the sealed packages, poll books," etc., and further provided that, "if the result of the election was not changed by such recount the costs and expenses should be paid by the party at whose instance the same was made," it never intended that a member of the canvassing board should, after a recount was demanded and made, utterly ignore the result of such recount, and enter on the election record the result ascertained from the returns of the precinct officers before the recount was demanded. Who would demand a recount and incur the risk of paying the costs of the same, if a member of the board could disregard the result, and excuse himself by saying he was not satisfied therewith? While it is true that one of the envelopes or paper sacks in which the ballots were returned from the voting precinct to the clerk's office was ripped in putting the ballots in it, and it was not properly sealed and indorsed, yet the sack was tied up with twine, and placed in the ballot box, and in this way brought to the clerk's office, and the ballots so returned were counted by the board of canvassers, and the number of votes cast for W. R. D. Dent and the number cast for H. F. Brohard were ascertained; and after the recount had been demanded by Dent, and the votes recounted in presence of J. K. Means, the defendent so far as appears without objection on his part, on the 17th day of December, 1898, said J. K. Means went into the clerk's office of Taylor county court, and made an entry upon the election record that he, as a member of the board of canvassers of Taylor County, charged with the duty of canvassing, ascertaining, and declaring the result of the election held in said county on the 8th day

of November, 1898, said that he declined to join with his associate, W. J. Curry, in certifying the result of said election as recorded by said Curry alone on the 14th, 15th, and 16th of November, 1898, purporting to be the result of said election, for the reason that he (said Means) was not satisfied that the result as above declared was correct. He, however, proceeds to state that he concurs with the recount, except as to the record for the office of House of Delegates and county commissioner for the four-year term, then proceeds to declare the true result to be as ascertained on counting the ballots returned by the precinct commissioners, and proceeded to issue a certificate in accordance with the result ascertained before the recount was demanded, certifying that he had carefully and impartially examined the returns of said election. It thus appears that the ballots were not in such bad condition as to prevent this officer from making a careful and impartial examination when they were first returned to the clerk's office, and nothing appears to have prevented the same careful and impartial examination on the recount, and yet Commissioner Means was not satisfied, nor does it appear that he asked to make any further examination of the ballots. We come now to the inquiry whether the duties of this commissioner with reference to counting and recounting the vote were such as he could not be compelled to perform by *mandamus.* We find the law thus stated in 13 Enc. Pl. & Prac. p. 520: "While the writ of *mandamus* lies in many cases to courts and judicial officers to compel them to perform certain acts, or to take action in various classes of cases, in no case will the writ issue to control the exercise of discretion vested in such court or officers;" and on page 528 of same volume it is said: "When the writ of *mandamus* issues to ministerial officers, though they constitute part of the machinery of the courts, or to judicial officers to command acts which are ministerial, and involve no exercise of discretion, the writ may control such officers, and not only command them to perform the acts in question, but direct the manner of such performance and the decision which they are to render,"— citing numerous authorites. McCrary on Elections (page 198, s. 261), on this question, says: "It is well settled that the duties of

canvassing officers are purely ministerial, and extend only to the casting up of the votes, and awarding the certificate to the person having the highest number.    They have no judicial power,"— citing many authorities.    The same author (p. 290, s. 385) says:    "The courts will not, undertake to decide upon the right of a party to hold a seat in the legislature, where, by the constitution, each house is made the judge of the election and qualification of its own members; but a court may, by *mandamus*, compel the proper certifying officers to discharge their duties, and arm the parties elected to such legislative body with the credentials necessary to enable them to assert their rights before the proper tribunal."    In the case of *Brazie v. Commissioners*, 25 W. Va. 220, Snyder, Judge, delivering the opinion of this Court, says:    "The authorities uniformly agree that the precinct commissioners act judicially in passing upon the right of persons to vote.    The county commissioners, then, as a mere ministerial body, have no power to review this judicial action, because to do so they must of necessity act judicially," etc.    Again, on page 222, he says: "All the acts which the commissioners can do under the statute must be based upon the returns.    Their final act and determination must be such as appears from and is shown by the returns from the several voting places of the county to be correct. * * *  They are authorized to enter no judgment, and their power is limited by the express words of the statute which gives them being to the signing of a certificate containing the whole number of votes received by each person for each office, and therein declaring the result, after having carefully and impartially examined the returns of the election.    This certificate, thus signed, is not a judicial judgment, * * * but is a declaration of a conclusion limited and restricted by the letter of the statute."    In the case of *Lewis v. Commissioners*, 16 Kan. 107, Brewer, J., delivering the opinion of the court, said:    "The view taken by the Iowa court seems to us the correct one.    It is the duty of the canvassers to canvass all the returns, and they as truly fail to discharge this duty by canvassing only a part of the returns, and refusing to canvass the others, as by refusing to canvass any; and it is settled by abundant authority that where

the board refuses to canvass any of the votes it may be compelled to do so by *mandamus*, and this though the board has adjourned *sine die*,"—citing *Hagerty* v. *Arnold*, 13 Kan. 367, as a case in point. "The canvass is a ministerial act, and part performance is no more a discharge of the duty enjoined than no performance. The adjournment of the board does not deprive the court of the power to compel it to act, any more than the adjournment of a term of the district court would prevent this court from compelling by *mandamus* the signing of a bill of exceptions by the judge of that court, which had been tendered to him before the adjournment. * * * As a general rule, when a duty is at the proper time asked to be done, and improperly refused to be done, the right to compel it to be done is fixed, and is not destroyed by the lapse of the time within which, in the first place, the duty ought to have been done."

Now, applying this ruling to the case under consideration, it appears that W. R. D. Dent demanded a recount of the votes, which was proceeded with, both commissioners being present; Curry, one of the commissioners reading the ballots, and the clerk recording them, until all the ballots were thus canvassed, and the vote recorded. It does not appear that Means objected at the time to the mode of ascertaining the result, or to the conduct of either of the parties engaged in making the recount, nor does it appear that he asked that the ballots from any of the precincts should be recanvassed. Curry remained until the record was made up by the clerk, and signed the same, and made out the certificates. Means, in his return, says that he refused to make a record of said recount, but does not state when he so refused, and to whom he gave notice of such refusal. Said Means, in his return, also says "that immediately after said Curry had the record of said partial recount, made as aforesaid, entered upon the record book in the clerk's office of the said county, he absented himself from Taylor County." But the record shows that Curry signed the proceedings of the 15th of November, including said record, and that on the 16th both Means and Curry were present, and Brohard and Armstrong tendered bills of exceptions; but the record nowhere shows that Means

objected to the recount, or assigned any reason for not sign-ing the declaration of the result, although Curry was pre-sent the day after he had signed it, and did not immediately absent himself, as the return states, as he signed the adjourning order on the 16th.  Again, it is claimed that Means went out of office, and for that reason he could not be compelled to sign the declaration of the result of the recount.  He does not appear to have been out of office on the 17th of December, 1898, when he proceeded to declare the result without reference to the recount, simply stating that he was not satisfied therewith, and issued a certificate of the result, found, as he says, by carefully and impartially examining the returns of the election.  Now, as it appears to me that all that remained to be done by J. K. Means was to sign his name, this would have completed the recount, and certified the result.  He says, in his return, that he suspected frauds, but he does not point them out; neither did he at the proper time ask an opportunity to do so.  He simply absented himself, and declined to add his signa-ture to the record, which was a personal duty imposed upon him by the statute. If a commissioner can, by saying he is not satisfied with the result, and resigning, prevent the result of an election from being declared, few candi-dates would receive certificates where the commissioners are of different politics.  That this was a personal duty is apparent from the fact that his successor would know nothing about the proceedings in counting the vote, and, of course, could not certify.

In the case of *State* v. *Shearer*, 29 Neb. 477, (45 N. W. 784,) it was held that:  "It is the duty of the county clerk to report all the fees of his office, and pay the excess over the amount to which he is entitled into the county treasury. This duty is personal to himself, and in case of his failure to perform his duty in that regard a *mandamus* may be issued, even after the expiration of his term of office, to compel the performance of such duty."  Now, the duties required by statute of this board of canvassers in making the returns of the fact as to the result of elections is not entirely dissimilar to the duties required of a sheriff. Under the statute, he is required to return the time and manner of serving process, and to subscribe his name to

such return. The canvassers are required to ascertain the result of the election by counting the ballots, and, when ascertained, they are to certify the result; but the performance of such duty on the part of the sheriff is not limited to his term of office, as will be seen by reference to the case of *Shenandoah Val. R. Co.* v. *Ashby's Trustees*, 86 Va. 232, (9 S. E. 1003), in which case a sheriff was allowed to amend his return, thirteen years after judgment by default, to show that service was on a director of the defendant corporation in the county wherein he resided. Lewis, P., in delivering the opinion of the court, said: "And it makes no difference that the officer by whom the return was made has gone out of office, there being no specific limitation of the time within which the power may be exercised,"—which case is cited with approval by BRANNON, JUDGE, in the case of *Hopkins* v. *Railroad Co.*, 42 W. Va. 537, (26 S. E. 187). This recount was demanded by Dent at the proper time, and, as it seems to me, was improperly refused on the part of the defendant Means, and in my opinion the return filed by him in this case furnishes no sufficient excuse for his failure to perform the duties required of him by statute. I would, for these reasons, be in favor of awarding the *mandamus.*

*Dismissed.*