[No. 7026.]

## LEARY ET AL. v. JONES.

1. MANDAMUS—*To Judges of Election*—In the interpretation of the ballot by what appears upon its face, the actual count thereof, and the determination of the result, the judges of an election act judicially, and proceeding in good faith, are not controlled by mandamus—(198).

But their duty to count the ballots, and afterward make return of the result is entirely ministerial, and mandamus will lie to compel its performance—(193).

2. ——*Answer*—Where upon mandamus against two of the judges of an election, to compel them to certify to the result, the answer by its silence admitted the counting of the ballots by the three judges, and that if the result, as so ascertained, had been certified, it would have shown the election of the petitioner, an averment that only a certain number of votes were cast, and that upon opening the ballot box after the close of the election a much greater number of ballots was found therein, in the exact similitude of the official ballot, was held to present no defense—(200).

3. ——*Adjournment of the Board—Effect*—The adjournment of the judges, and their separation, is no answer to a mandamus

to compel them to return the result of their count of the ballots; they may be compelled to re-assemble—(199).

4.  ——*Judgment*—Where the pleadings show that, complying with the law, only a certain return can be made, it is proper to command the judges to sign and certify such return—(200).

5.  ——*Parties*—A defect of parties which is injurious only to the petitioner does not avail the respondent—(200).

6.  APPEAL—*Questions Not. Presented Below*—The court will not entertain questions which were waived or not presented in the court below—(201).

*Error to Denver District Court*—HON. HUBERT L. SHATTUCK, Judge.

Mr. CHARLES S. THOMAS and Mr. THEODORE H. THOMAS for plaintiffs in error.

Miss GAIL LAUGHLIN for defendant in error.

Mr. JUSTICE HILL delivered the opinion  of  the Court:

It appears from the pleadings, that the plaintiffs in error (who were the respondents in the court below) with one Moran, constituted the judges of election in precinct No. 3 for the school election held in the City and County of Denver on the 3rd day of May, 1909; that, after the closing of the polls, all the judges of election from the thirty-one precincts (which constitute said school district), including the respondents, and Moran, immediately repaired to one of the voting places, to-wit, the East Denver High School, and then and there proceeded to count the ballots cast in their respective precincts.  It is alleged, and not denied, that the judges for all of the other precincts, immediately after having counted the ballots in their respective precincts, reported their results to the secretary of the school board, who entered such returns upon a tally-sheet, to which all the other judges affixed their respective signatures; but that the respondents, after the

count of the ballots found in the box in precinct No.
3, refused to make a report of the result of said count
to the secretary of the board, or at all; that Moran did
report in writing to the secretary, the result of said
count, which report the respondents refused to sign and
have ever since so refused to do; that the Board of
Directors refused to accept the report from precinct
No. 3 signed by Moran, as a proper return, and have
denied to the relator (defendant in error here) the
right to participate in the deliberations of said board,
after proper and lawful demand was made therefor,
etc. Upon account thereof she instituted mandamus
proceedings against the respondents, to compel them to
certify the result of the count in their precinct, alleg-
ing, in addition to the foregoing, that the result of the
count of said respondents and Moran, for said pre-
cinct, was a certain number for each of three candi-
dates, naming them, and giving the number for each,
followed with the total vote of the district, which, when
this precinct was included, showed that the relator had
been elected, and that if the result of said election in
said precinct was so certified, the total would then
show that she was elected as a member of the directors
of said board, entitled to qualify, etc.

A demurrer was sustained to the answer; the re-
spondents elected to stand by their answer; judgment
was in favor of the relator, making the alternative writ
peremptory, commanding the respondents, within five
days, to sign the returns from precinct No. 3 of the
vote cast in said precinct at the election held on the
3rd day of May, 1909, theretofore signed by said
Moran. The respondents bring the case here for review
upon error.

The answer, including its admissions, and by its
failure to deny certain allegations of the relator, sets
forth only two defenses. In substance, the first and
principal defense is, that while it is true the respond-

ents and Moran acted as said judges of election, that
three hundred sixty-five persons, and no more, cast
ballots in said precinct and deposited the same in the
ballot box prepared, and used for that purpose at said
election; that their names were duly recorded upon the
poll book or voters' list kept by the clerks of said elec-
tion precinct; that immediately after the polls were
closed, all three judges went to the East Denver High
School for the purpose of counting and canvassing the
ballots; that, when they opened the ballot box, they
found therein one thousand one hundred sixty-three
ballots, each of which was in exact similitude of the
official ballot voted at the several precincts, or seven
hundred ninety-eight excess papers or ballots. By fail-
ing to deny, they admit the allegation that the ballots
disclosed upon their faces the result as set forth by the
relator, but they allege that on account of the above
facts they were unable to ascertain or determine which
of said papers were ballots cast by the three hundred
sixty-five voters who voted in said precinct at said
election, and which were not such ballots, for which
reasons they allege they made a return to the board
containing the above statement, including the fact that
they were unable to determine what ballots were good,
and what ones fraudulent, and therefore made return
that no valid election was held in said precinct, and
that they ought not to be required to furnish a false
and fraudulent report and return. As a part of this
defense, they set forth the further facts, that, eliminat-
ing this precinct, another candidate, other than the re-
lator, had received the highest number of votes for
such office and that there being no election in this pre-
cinct, on account of such frauds, the other candidate,
naming him, and not this relator, was elected to said
office and entitled to the seat.

The second defense is that inasmuch as the re-
spondents have fulfilled their mission, made their re-

port to the board of school directors, surrendered the ballot box and poll list, and departed their several ways, their offices as judges of the school election absolutely ceased, and that since said time they have not been, nor are they now, judges of the school election.

The first question necessary to consider is the duties of judges of election. It is claimed by the relator that they are purely ministerial, and if performance is refused it may be compelled by mandamus. In support of this position we are referred to Vol. 15 Cyclopedia of Law and Procedure, page 379, wherein it is stated:

"Inspectors and judges of election are ministerial officers, and where they neglect or refuse to make a return or make an erroneous or improper one they may be compelled by mandamus to perform their duty."

Also, to McCrary on Elections, 4th Ed., Sec. 264, wherein that learned author says,

"The doctrine that canvassing boards and return judges are ministerial officers possessing no discretionary or judicial power is settled in nearly or quite all the States."

Also, to Vol. 26, Cyclopedia of Law and Procedure, p. 278, wherein it is said,

"It is very generally held that certifying or declaring the results of an election is a ministerial duty which may be compelled by mandamus, and this, it has been held, although the refusal to act was on the grounds of fraudulent voting."

Also, to the case of People ex rel. v. Bell et al., 119 N. Y. 185, wherein that court said,

"We cannot hold otherwise as to inspectors of elections than that they are, under the provisions of the election law, made ministerial officers wholly, for their duties are pointed out by the law definintely."

The respondents contend that for the purpose of

determining the result in the precinct, and certifying the returns, the decision rests solely with the judges of election as to the result of the votes, what is legal and what is not, for whom cast and for whom not, and the right to so certify, and that in the performance of these duties, their acts are judicial and not ministerial, that it requires the exercise of official judgment, the sound discretion of the person in whom the duty is confided, and that in all such cases mandamus will not lie. To support this position they cite *People v. Reardon,* 3 N. Y. S. 560, wherein it is said: "a majority made and signed and filed with the city clerk the result as found by them. This action on their part was judicial in its nature. A writ of *mandamus* does not lie to compel an officer, exercising judicial functions, to make any particular decision, or to set aside a decision already made."

They also cite the case of *People ex rel. Haverly v. Hanes et al.,* 90 N. Y. S. 61, wherein the Court said:

"Inspectors of election have both judicial and ministerial duties to perform. In determining what ballots shall be counted for or against any candidate, or any question voted on, or what ballots shall be rejected, they act judicially. They may, perhaps, be required by mandamus to perform merely ministerial acts in a particular way, and they may also be required to exercise their judicial functions; but they cannot be required by a common-law mandamus to decide in a particular manner. * * * It is the performance of a judicial act on the part of the inspectors which is complained of in this case; not the failure on their part to act judicially, but the judicial conclusion reached by them; and it is this judicial conclusion which it is sought to have changed. The inspectors have performed the judicial act complained of. They may not have reached a correct conclusion, but they have acted and exercised their judgment, and the conclusion reached by them cannot be reviewed herein."

Also, the case of *Dent v. Board of Commissioners,* 45 W. Va. 750, wherein the court said:

"One canvasser says that it is correct, and satis-fies his judgment and conscience; the other says it is not correct, and does not satisfy his judgment and con-science. Shall he be compelled to give an assent under such circumstances? * * * they act judicially in determining that the ballots, poll books, and certificates of the election returns are genuine or altered."

They also cite, as supporting their position, the cases of *Metz v. Maddox,* 189 N. Y. 461; *Cannon v. Board of Canvassers,* 24 R. I. 473; *Corbett v. Naylor,* 25 R. I. 520; *County Judge v. Kenner,* 105 Ky. 517.

From a careful examination of the authorities cited, we are of opinion that all of those referred to, when limited to the particular matters intended to be covered, are, in the main, correct.

Under the provisions of our statutes, judges of election evidently have both judicial and ministerial duties to perform; most of their duties, however, are purely ministerial, in which cases the method of their performance is specifically pointed out and no discre-tion is to be exercised. Under the facts as disclosed by the pleadings, the duty of certifying to the result of this election was purely ministerial, and the re-spondents were not justified in refusing.

Considered with the allegations of the relator not denied, the answer, as a whole, shows, that the respond-ents were two of the judges of election; that they, with Moran as the third, conducted it, and as such, after the polls were closed, went to the proper place to can-vass and ascertain the result; that in doing so they ascertained that there was a certain number of ballots in the box proper in form; that they were cast or pur-ported to have been cast for the different candidates, as alleged by the relator. When this condition was

ascertained, and these facts were disclosed and so
found by them as judges of the election, it was their
duty to complete the remainder of their work by cer-
tifying to the result (which was purely a ministerial
duty, clerical in its nature) and they had no right to
refuse because of their claim (if true) that there were
irregularities, frauds and illegal votes in the ballot box;
that was not a question at this stage of the procedure
for them to determine, that question should have been
left for the courts, as said in the case of *People v. Rear-
don, supra,* cited by respondents, "when the party who
is thereby shown elected shall fill the office, a *quo
warranto* is the proper remedy to determine whether
he has been duly elected. If upon the hearing it shall
be adjudged that the claimant is entitled to the office,
a *mandamus,* if necessary, will be allowed to compel
his restoration to it." It is not proper for judges of
election in one particular precinct to attempt to decide
that on account of frauds having been committed no
election has been held.

A somewhat similar state of facts is to be found
in the case of *The State ex rel. Reynolds, etc., v. The
Mayor and Council of Monroe,* 46 La. Ann. 1276, in
which case it was held that the promulgation of the
returns of election by a mayor and city council is a
ministerial duty; obedience to which will be compelled
by mandamus. In which case, concerning the ques-
tion of frauds, the court said:

"If frauds are committed in the election of a char-
acter to vitiate the tax, or other causes exist to oppose
it, the remedy is not to be sought in any discretion of
the council. Instances are not infrequent of taxes of
this character being resisted, nor has there been the
least difficulty in finding suitable remedies where there
is ground for their application, but remedy and relief
is not by the refusal of the municipal authorities to
perform ministerial acts. There is, in our view, no

place in this discussion for questions of fraudulent voting, or other defences intimated against the tax itself. Such issues can have no determination to bind anybody to the mere issue whether the result of an election shall be announced by those charged with the duty. Hence, while we have given due attention to all these defences, we are clear they are foreign to the issue here and need no other comment."

We think these comments are applicable to the case at bar. A trial between the relator and these respondents, upon such issues as are attempted to be raised by the answer, can have no determination to bind anybody. The result would not be conclusive in a *quo warranto* or otherwise, to decide who was entitled to the office, and those facts are foreign to the issue here which refers to the performance of a purely ministerial duty.

Counsel for plaintiffs in error have cited numerous well reasoned cases, including some by this court, to the effect that where fraud and irregularity occur in the conduct of an election to such an extent that it is impossible for the contesting tribunal to separate, with reasonable certainty, the legal from the illegal or spurious votes, the precinct wherein the frauds occur should be excluded. We have no contention with this principle, nor with the authorities cited in its support. If the facts exist, pertaining to this precinct, as alleged by the respondents, and no way can be pointed out (as stated by them) whereby the legal votes can be separated from the illegal, and effect be given to the honest votes cast, we can make no suggestion that will aid in the determination of the result of the vote in the precinct, and would probably assume (following former cases) that when the question was properly raised in the proper tribunal, the precinct would have to be rejected in its entirety, but that question is not here for determination; yet, if conditions did exist,

as alleged, we have not the language at our command to emphasize sufficiently our disapproval of the acts of any citizen, be he great or small, who will participate in, recognize or countenance such practices, including any official, high or low, who, in the performance of his official duty or otherwise, will allow it to be done, when he can prevent it. But this is not the question for determination; to the contrary, the question presented is whether the judges of election, or a majority of them, can raise such an issue as an excuse for their non-compliance with the law in making their official returns.

McCrary on Elections. 4th ed. sec. 264, upon such questions of frauds. says.

"In *Attorney-General v. Barstow, supra,* the supreme court of Wisconsin say that the canvassing officers 'are to add up and certify by calculation the number of votes given for any office; they have no discretion to hear and take proof as to frauds, even if morally certain that monstrous frauds have been perpetrated.' "

We think the case of *State ex rel. v. Stevens,* 23 Kans. 456, relied upon by the respondents, is distinguishable from the case at bar. It pertained to the refusal of the county canvassing board to canvass the returns from the entire county, for the reason that the purported returns disclosed a total vote of two thousand nine hundred and forty-seven, when there were only about eight hundred legal voters in the county. Referring to the election in its entirety, the court said,

"If it be said that this wrong may only have occurred in the returns from certain precincts, and that the others should have been canvassed, we reply that no such question is here presented. The answer presents the matter as a whole, and as though the wrong was universal."

This election also involved the removal of a county
seat, which usually engenders the most bitter fights,
and presents the greatest of temptations to commit
fraud at any elections. Referring to the other ques-
tions, the court, among other things, said:

"Our general knowledge of matters and events
assures us that in an outlying and frontier county
like Harper, there is no such number of legal voters,
and hence that the return of the commissioners that
the large majority of such apparent vote is illegal and
fraudulent, is substantially correct.

"The question therefore presented is not, whether,
when there have been, or is charged to have been,
here and there, illegal votes received, or legal votes
rejected, or fraudulent or irregular practices on the
part of the officers in any one or more voting precincts,
the county board has a right to inquire into the merits
of such votes, or the conduct of such officers, but
whether, when there are sent in to the canvassing
board returns showing such an enormous number of
votes as to be perfectly obvious that they are not true
returns of legal votes actually cast, but simply manu-
factured evidences of an attempt to defeat the popular
will, this court will, by *mandamus,* compel the board
to accept as true these fraudulent returns and canvass,
and declare the result as though they even *prima facie*
showed the actual vote."

It will be observed from the above that the em-
inent jurist who wrote the opinion expressly elimin-
ated from their consideration any case similar to the
one at bar. Also, it is not alleged in the pleadings here
that there were not as many legal voters in this pre-
cinct as there were ballots found in the box; nor are any
reasons given by the respondents why they permitted,
or why they could not have prevented, the spurious and
excess ballots from being deposited in the box. Other
cases cited by counsel are mostly where a dispute has

arisen as to the counting or rejecting of some particular ballot upon account of the way it has been cast, which involves the performance of a judicial duty by the board.

In the case of *People ex rel. v. Hanes, supra,* it was sought, by mandamus, to compel the board to recount and recanvass ballots theretofore counted and canvassed by them, and on such recount to reject ballots theretofore counted and to count ballots theretofore rejected as void. The result of the election showed an equal number of votes for and against the local option question. The inspectors had rejected four ballots, one of which it was claimed should have been counted. They also counted a number of ballots which the relator claims were void, but had made complete returns of the result; in which case it was held that inspectors of election have both judicial and ministerial duties to perform, and, having performed both, that the judicial conclusion reached by them was not subject to change by mandamus. The court said they may not have reached the correct conclusion, but they have acted and exercised their judgment, and the conclusions reached by them cannot be reviewed herein.

To the same effect is the case of *County Judge v. Kenner,* 105 Ky. 517, where the canvassing board met, as provided by law, and acted upon the returns made to them; there was no complaint of their failure to discharge the duty imposed upon them. The complaint was that they decided wrong, and counted ballots which they ought not to have counted. It was held that in this respect they were invested with judicial functions.

The same principle is announced in *Corbett v. Naylor, supra,* where it was held that where the votes cast had been counted by the moderator, the result announced, and the ballots sealed up and delivered to the state returning board, mandamus would not lie to compel the moderator to count a certain ballot in favor of the petitioner, that all that could

be accomplished by mandamus would be to compel the moderator to use his judgment in counting the ballots (which he had done). and not to direct him how to count them.

The case of *People ex rel. v. Bell et al., supra,* is quite similar to the case at bar. In that case a mandamus was sought against two judges of election to compel them to sign and certify as correct, a report, which had been made by two other judges, of the vote cast in the precinct, in which the four had served as judges, or inspectors of election, as they are called in New York. It was shown, that, after the closing of the polls, they counted the ballots cast and ascertained the result, but refused to affix their signatures, upon the ground that fraudulent votes were cast by persons who were not registered, but who falsely personated registered voters, and who, upon being challenged, complied with the statutory test in taking the oath. In which case it was held that it was their duty to make return of all the votes cast, and of each to attach his signature to the return, and that a peremptory writ of mandamus was properly granted. Upon this subject the court, at page 185, said:

"They are bound to an exact obedience of the particular commands which the law has laid upon them as its officers, and they may not act on their own opinions or knowledge."

Upon the question of frauds the court, among other things, said:

"If, with all the safeguards with which popular elections are legally and naturally surrounded, frauds are perpetrated, the tribunals are open, and laws and a system of procedure exists, for the punishment of the offenders and for the rectification of consequent errors."

This reasoning is in harmony with our conclusions. The actual count, and determination of the result of the count of the ballots, when honestly exercised in

good faith, has always been the exclusive province of
the judges of election, as where there is a dispute as
to the count, or the result of a ballot, to be determined
from what is shown upon its face, and their disposition
of it, so far as their action is concerned is judicial, and
is not subject to review by mandamus other than to
compel them to certify the result of such action; but in
the case at bar, by their answer, the respondents elimi-
nate all these questions by setting up the fact of the re-
sult of the count, and by failing to deny the facts stated
by the relator.   In other words, in the performance of
their judicial duties, they have determined all questions
over which the court, by mandamus, could not dictate
the result of their action, the only thing left was to
certify the result which cannot be refused by raising a
question which is not properly triable in an action of
this kind.

At least twice this court has held that the regular
duties of the county board of canvassers are purely min-
isterial, and where the returns are substantially regu-
lar upon their face, their only duty is to count and cer-
tify the result of the vote as certified to them by the
judges of election.—*Kindel v. Le Bert.* 23 Colo. 385;
*Lehman v. Pettingell,* 39 Colo. 258.

In Pennsylvania, where the return judges of two
counties composing a senatorial district, made a due
return in their respective counties for the votes for sen-
ator, and where the return judges of the whole district
refused to sign a certificate of election, for the reason,
as they alleged, that fraud and bribery had been made
use of in obtaining votes to so large an extent as to
vitiate the election, or change the result, it was held that
they could be compelled, by mandamus, to sign a proper
certificate and that they were bound to certify that the
person appearing, by the county returns, to have the
greatest number of votes, was elected, that in that case
the senate is the only tribunal to investigate charges of
fraud, etc., in the election of one of its members; in

which case, among other things, the court said, in sub-
stance, that to allow this as a defense for the failure to
comply with their duty would simply be preposterous,
and that the return judges had no jurisdiction of the
existence of alleged frauds in the election, and that their
plainly expressed duty in certifying the returns clearly
excluded the exercise of any other duty incumbent with
it.

To the same effect, in substance, are the cases of
the *State v. County Judge*, 7 Iowa, 188; *Dalton v. State,*
43 Ohio St. 652; *Lewis v. Commissioners*, 16 Kans. 102;
*Holt v. People*, 102 Ill. App. 279.

Respondents make the contention that the writ
should not be granted, for the reason that they, as
judges of election, in the performance of their duties
as a canvassing board, having adjourned, could not be
required by law to reconvene for the purpose of making
another certificate; as they had no power to reconvene,
the courts cannot compel them to do what they are pow-
erless to do themselves.    We do not think this position
is well taken.    In the first place, the purported return,
setting up certain facts and stating that on account
thereof no election had been held, was no return at all.
Second, if their position is correct, it would apply to at
least two of the county board of canvassers in all coun-
ties throughout the state where the county clerk calls to
his assistance two justices of the peace.

In the case of *Lehman v. Pettingell*, 39 Colo. 259,
this question was directly raised, in commenting upon
the fact this court said:

"The fact that the board may have adjourned with-
out completing its work we do not regard as material.
The board can be compelled by mandamus to reconvene
to make a canvass of the returns from all the precincts
whenever it appears, by proper petition, that it has
failed to do so."

We think the same principle is applicable here, and
that the court committed no error in this respect.

The contention is also made that the court erred in compelling the respondents to act in a certain manner, to-wit, to sign the returns theretofore signed by Moran. It is contended that the extent of the court's jurisdiction was to compel the respondents to act, and that it was without jurisdiction to compel action in a certan manner. We deem it unnecessary to pass upon this question, for the reason that if the trial court erred in this respect it was harmless error to the injury of no one. By the statements and admissions in their answer, it is shown that when the respondents comply with the law, the result of their actions can not be other than as contained in the Moran certificate, for which reason that portion of the order compelling them to make a certain return instead of making a return, if erroneous, was entirely harmless as against them, or any one to be affected by it.

At the oral argument, the further contention was made that the proper parties are not before the court. Two positions were urged in this respect: first, that under the provisions of the statute pertaining to the canvass of the returns of a school election, in order to secure the relief prayed for, the judges of the election for each of the thirty-one precincts in the City and County of Denver, must be made parties. It is claimed the rule is that where all parties necessary are not before the court, the writ will be refused. The second contention is that at least the other judge of this precinct, Moran, must be made a party; that he was not so made, and for that reason the writ should have been refused. Neither of these questions was raised in the court below; nor is either of them covered by the assignments of error or the briefs, for which reasons, it is not incumbent upon us, at this time, to make any ruling thereon. The first was expressly eliminated by the answer of the respondents themselves, wherein they state,

"That they are without definite information as to what was done by the judges of other precincts on the occasion referred to, and respectfully suggest, that for the purposes of this proceeding, what was done by other judges in other precincts, is immaterial."

Having taken this view at the trial and having had their case disposed of accordingly, they ought not now be allowed to change their position and allege that the action of the other judges was material and that they were necessary parties.

The record discloses that the other judges, including Moran, for this precinct, had already executed and signed their respective returns, and while, for the reasons stated, we deem it unnecessary to establish a precedent by passing upon the question of whether they were necessary parties, it appears that if the writ was issued against them, it would only be to command them to do what they had already done. By their answer the respondents concede it was their duty to make a return for this precinct; their defense is that they did so and the case appears to have been disposed of along these lines presented by them. The record being as it is, we do not think the respondents are in a position to raise either of these last two questions. Should the relator, upon account of her failure to have the necessary parties in court, fail to secure the desired result in establishing *prima facie* her title to the office, that would be her misfortune, but would work no injury to these respondents and is no excuse for them, after having waived these questions by failing to raise them in the court below, to now have the right to present them, for the first time, in this court.

The judgment is affirmed.          *Affirmed.*

Decision *en banc.*

Mr. JUSTICE MUSSER dissents.