# CHARLESTON.

E. T. ENGLAND *v.* BOARD OF CANVASSERS OF RALEIGH COUNTY.

## (No. 5890)

Submitted December 14, 1926.  Decided December 15, 1926.

1.  ELECTIONS—RECOUNT—*Where Fair Recount of Ballots Cast at Election Has Been Had Upon Request of Person Voted for at Election; and Ballots Sealed and Endorsed by Members of Board of Canvassers and Delivered to Clerk, as Set Out in Sec. 68, Chap. 3, Code, it Becomes Duty of Board to Certify Result so Ascertained.*

    Where a fair recount of the ballots cast at an election has been had upon the request of a person voted for at the election; the ballots have been sealed and endorsed by the members of the board of canvassers and delivered to the clerk, as set out in Sec. 68, Chap. 3, Code, it becomes the duty of the board to certify the result so ascertained.  (p. 698.)

2.  SAME—*In Such Case Ballots Cannot be Again Re-opened and Another Recount Had Upon Motion of Member of Board, Upon Ground That He is Dissatisfied Simply Because Another Member of Board, Upon Some Unsubstantial Pretext or Reason, Has Succeeded in Having Ballots Recounted at One of Precincts.*

    In such case the ballots cannot be again re-opened and another recount had upon the motion of a member of the board, upon the ground that he is dissatisfied simply because another member of the board, upon some unsubstantial pretext or reason, has succeeded in having the ballots recounted at one of the precincts.  (p. 699.)

Original Jurisdiction.

Writ of Mandamus petitioned for by E. T. England directed against the Board of Canvassers of Raleigh County.

*Writ awarded.*

*Charles Ritchie, W. H. Rardin,* and *D. D. Ashworth,* for relator.

*Williams & Riffe,* and *E. Clyde Scott,* for respondents.

LIVELY, JUDGE:

Congressman Taylor and General E. T. England were opposing and only candidates for the house of representatives from the 6th Congressional District at the general election November 2, 1926. The returns indicated England's election, and Taylor asked for and was accorded a recount in all of the counties comprising the district which includes Raleigh County. The Raleigh County board of canvassers composed of respondents Lively, Cole and Arthur, began the recount on November 15th, representatives of both candidates being present. It appears to have been agreed to by the parties and board that the ballots at each precinct should be recounted and sealed up again as the statute directs, copies of the ballots questioned being taken and preserved for final action when all of the precincts were finished; and that the parties were to make notation of points, irregularities or exceptions to the ballots at the various precincts and direct the attention of the court thereto, likewise to be disposed of when the recount was finished; all in order to expedite the recount.

The recount proceeded, and on or about November 22nd all of the ballots had been examined, counted, subject to exceptions and objections noted, and again sealed and delivered to the clerk. England's counsel made exception to the ballots at Leevale Precinct on the ground that they had not been properly endorsed by the receiving clerks, and Taylor's counsel excepted to Pine Grove Precinct ballots on the same ground. Exceptions had been made also to ballots at Slab Fork. Evidence of the clerks and officials relating to the ballots at Leevale and Pine Grove was taken on November 19th and 23rd; and evidence on Slab Fork ballots was taken on November 23rd and 29th. The board met on November 29th to hear the evidence on Slab Fork. This precinct was disposed of and recorded. All motions and exceptions by the parties made and preserved during the recount, including the dis-

putes over particular ballots at various precincts, of which copies had been preserved, had been disposed of by the board, and nothing remained but to tabulate the vote so ascertained and issue the certificate of result required by the statute. At this stage of the proceeding Commissioner Cole desired to take testimony concerning Cranberry Precinct, the home precinct of Commissioner Arthur. It appeared that Ashworth, counsel for England, had made a memorandum of defective signing of the ballots by the clerks at Cranberry Precinct, but it does not appear that he had directed the attention of the board to it, or that he had made any motion of record concerning it. The motion to hear evidence on Cranberry did not come from him. It came from Cole. Thereupon, Arthur and Lively, the other commissioners, objected to taking any further evidence or going into any other precinct; they expressed themselves as satisfied with the result as then ascertained by the recount. But Cole insisted on hearing evidence on Cranberry Precinct. Arthur then said to Cole, (using his words as given by him), "I have got some places if you go into Cranberry that I am going into." He did not indicate what places they were. The evidence on Cranberry was then introduced, considered, and that precinct disposed of. The board then adjourned until December 4th, when Cole being absent, a further adjourment was had until December 8th. When the two commissioners, Lively and Arthur, met on December 4th, they promptly adjourned until the 8th, indicating that they would re-open the ballots at Winding Gulf and East Gulf Precincts and hear evidence on those precincts. It appears that counsel for Taylor had on the 1st and 2nd of December obtained affidavits of improper signing of the ballots at those precincts, which he privately exhibited to them. Before the adjourned meeting on the 8th was held, this alternative writ was served, seeking to compel a declaration and certificate of the recount completed on November 29th. The substance of the return to the writ is that the board is not ready to certify, because of the facts above set out.

The substance of the evidence is that on the 29th of November all of the motions and exceptions of both England and

Taylor had been disposed of, and the result in the county ascertained so far as they were concerned. Taylor, through counsel, objected to further proceedings, and both Lively and Arthur expressed themselves as satisfied with the recount made. Cole wanted to take evidence on Cranberry, and then it was that Arthur became dissatisfied with other precincts unnamed. After hearing evidence and passing upon Cranberry, the court recessed until the 4th of December, and in the meantime counsel for Taylor procured the affidavits and privately exhibited them to two members, who thereupon concluded to re-open the two precincts named in the affidavits, and recount them on the 8th of December.

We are of the opinion that Cole had no right to have Cranberry re-opened; he expressed no good reason why it should have been done. The fact that this precinct was re-opened by Cole would not justify Arthur in having other unnamed precincts re-opened. The matter apparently degenerated into petty differences between the members of the board, no doubt encouraged by the parties. A board of canvassers has no power under the statute to have a recount of the votes on its own motion. That is a privilege accorded only to a person who has been voted for at the election. He may call for a recount of the entire vote, or limit his request to a district or precinct. Without such request the board must ascertain the result from the returns, aided by evidence of those holding the election, if deemed necessary. A candidate can only have one recount. *Chenowith* v. *Commissioners*, 26 W. Va. 230. And if his recount be limited to one or more of the sealed packages of ballots, the board cannot, *ex mero motu,* open and recount other sealed packages. They may be of the opinion that something is wrong at other precincts, and that the returns therefrom do not reflect the truth, but unless moved to do so by some party in interest, they cannot open them and recount. But in this case they have opened up and recounted all of the precincts; and the proposition insisted upon here is, that having done so once, they may again re-open them and recount if any member be dissatisfied. That might be true, if he has any good substantial reason for being

dissatisfied. It cannot be based on a whim. Often when a precinct is recounted one member will not be satisfied with the recount and will vote "No" on the result thus ascertained. Can it be that such dissatisfaction based on conflicting judgment would entitle him to again open the sealed ballots in hope (or assurance it may be) that he can get a different result? Where would it end? The door to fraud would be open. One of the canvassers might be induced to change upon another recount. Unfortunately partizans are not choice in the methods of obtaining such results. We do not intimate that any inducement of that character has entered this case.

What was the substantial reason given by Cole for going into Cranberry at the end of the recount, and what substantial reason was given by Arthur for wanting to open up and recount other precincts unnamed? Cole says he moved to re-open Cranberry because, "he had information that the precinct was not regular;" and Arthur says he had other places to go into if Cole went into Cranberry, his (Arthur's) home precinct. Both of these precincts had been carefully scanned by the parties and by the board. Then was the time for either party or for any member to call attention to any irregularity and have it disposed of according to the agreed procedure, and not wait until the recount was finished, and then, as the result might dictate, call for another count. The particular result would be to give each party another trial to change the result. Arthur says that when recounting Winding Gulf and East Gulf he noticed that, "they didn't look like they had been signed up properly." Then was the time to bring attention to it. He did not do so; was satisfied at the end of the count and wanted to declare the result, until Cole insisted on re-examining into his (Arthur's) home precinct of Cranberry. Generally, when a person has knowledge of a fact which will affect a result, he is not permitted to remain passive or continue until that result is reached and then affirm or repudiate, according to whether the result is what he desired. It is very well established that the parties and board agreed that any exceptions, objections and

motions relative to ballots at any precinct were to be noted, and the board's attention directed thereto, and held for disposition, before the ballots were again sealed and deposited with the clerk. Both Cranberry and the two Gulf precincts were re-sealed without any such notation, objections or motions.

Respondents rely upon *Dent* v. *Board*, 45 W. Va. 750, for justification in re-opening the proposed precincts, on the ground that they, or a majority of them, were dissatisfied with the result of the recount made at those precincts. In the *Dent* case there were only two members of the board, and when they made the recount they could not agree on the result. One of the commissioners, Means, was sick during the recount which lasted through the night, or until about three o'clock in the morning, and the inspection and recount was hurriedly made without opportunity to him to carefully ascertain its accuracy, and this commissioner being physically exhausted during the long session, at the conclusion of the recount was not satisfied, until he could carefully inspect the ballots and pass upon their genuineness, aided by evidence of the election officers. At the conclusion he was not satisfied and refused to agree with the other canvasser that the recount was adequate, true and correct. His reasons for dissatisfaction were substantial, plainly apparent, and clearly warranted him in refusing to make the certificate. We have no such substantial reason in the present case. The only reason given is that Cole succeeded over the protest of two of the canvassers in re-opening Cranberry Precinct. Before that was done, every one was satisfied, except Cole, and were ready to declare the result and issue the certificates. The reason for refusing to certify the result of the recount, and for opening up other precincts already counted, is captious and unsubstantial. If a candidate after a recount is finished and the ballots sealed, is permitted to file affidavits with members of the board to induce them to become dissatisfied, it would amount to nothing more than another count on motion of that candidate. Of course, if fraud in the conduct of the recount is properly shown, the course would be different, for fraud vitiates all things.

In *State ex rel. Vandelinde* v. *McComas,* 97 W. Va. 664, a recount was granted Vandelinde. The ballots at each precinct were recounted and the .result of each precinct ascertained in totals. At the conclusion when the grand total was ascertained; Vandelinde had a majority of 22. The board refused to declare the result, and later entered an order disregarding the recount and declaring the result as certified by the election officials at the various precincts, which gave Messinger (the other candidate) a majority of one vote. In answer to an alternative writ to compel them to declare and certify the result as ascertained by the recount, the board answered that they were dissatisfied with the recount made by it, because of many ''discrepancies'' discovered by the board in the recount, and prayed that if they be ordered to reconvene, that they be permitted to re-open and recount the ballots, especially in certain precincts of which they were not satisfied that a true recount had been made. The board was ''dissatisfied'', and wanted to make another recount. This prayer was denied, and the peremptory writ was issued. So, here, the board wants to recount two precincts for the reason hereinbefore stated. By the same token it could recount any other, or all of the precincts heretofore counted and sealed, depending upon its own inclination or whether some candidate was sufficiently industrious to produce moving affidavits.

The writ will be awarded requiring certification of the result of the recount concluded on November 29, 1926.

*Writ awarded.*