This action was commenced in Buncombe County to procure a writ of mandamus to compel the defendant board to certify as the result of the election for Congress on 7 November, 1916, that the plaintiff received 4,037 votes in said county and his opponent 4,325 votes, the plaintiff alleging that this result was ascertained and determined by defendant board on 9 November, 1916.
The defendant denied that it ascertained and determined the vote for Congress on 9 November, 1916, and alleged, on the contrary, it postponed action on that day because of the absence of returns from three precincts and did not determine the result until 17 November, 1916, when at an adjourned meeting the board duly canvassed all the returns and judicially determined the result to be that the plaintiff received 4,043 votes for Congress and his opponent 4,353 votes, and that the result had been duly certified to the proper officers. *Page 854 
 An alternative writ was issued by Judge Shaw, returnable before Judge Adams, who at the hearing found the following facts:
(799) From the evidence I find the facts following:
1. The board of county canvassers met 9 November for the purpose of canvassing and determining the vote cast in Buncombe County at an election held 7th November. The plaintiff insists that the votes for a representative in Congress were canvassed by the board at this meeting; the board contends the the returns from three precincts had not been received and were not then before the board and that an adjournment was taken until Saturday, 11th inst., without a judicial determination of the returns. The evidence is diametrically conflicting, and I do not find as a fact that the returns were accepted and judicially determined and the congressional vote canvassed at this meeting.
2. On Saturday the board continued the tabulation of certain returns, but declined to complete the tabulation of the congressional returns, assigning as a reason therefor that the returns from Sandy Mush Precinct had not been received, and again adjourned until 10 a. m. Thursday, 16th inst.
3. The board reconvened on the 16th inst., and by request of plaintiff adjourned until the afternoon, when the writ issued by Judge Shaw was served upon the board by the sheriff of Buncombe County, whereupon still another adjournment was taken, until 10 a. m. Friday, 17th inst.
4. In the record evidence are certain papers purporting to be the returns made by the registrars and judges of election of the votes cast in 28 precincts of Buncombe County for a representative in Congress. As to five of these papers there is a controversy between the parties.
From Lower Hominy Township there is a paper, dated 7th November, signed W. E. Fletcher, registrar, E. E. Conner, judge of election, showing Weaver's vote to be 147 and Britt's 90, Olin's 4.
From West Asheville Precinct a similar paper, dated 7th November, signed by the registrar and two judges of election, showing Weaver's vote to be 287 and Britt's 246.
From Asheville Precinct, No. 2, a similar paper, dated 7th November, signed by the registrar and two judges of election, showing Weaver's vote to be 133 and Britt's 128.
From Hazel Precinct a similar paper, dated 7th November, signed by the registrar and two judges, showing Weaver's vote to be 73 and Britt's 45.
I find also other papers in this file purporting to be "amended and supplemental returns" from these precincts. Both the papers from Lower Hominy purport to be signed by Fletcher, registrar, and Conner, judge of election. The paper from West Asheville, dated 7th November, is signed by Brown, registrar, Hall and Moses, judges of election; the *Page 855 
supplemental paper, by Brown, registrar, and Hall, judge. The paper from Asheville Precinct, No. 2, dated 7th November, is (800) signed by Garren, registrar, and West and Ford, judges; the supplemental report by Garren and West. The paper from Hazel, dated 7th November, by Spivey, registrar, and Eve and Miller, judges; the supplemental report, by Spivey and Miller. These supplemental papers set forth, in addition to the votes stated in the papers of 7th November, the number of "unmarked votes" said to have been cast for Britt and Weaver. The total "unmarked votes" in these four precincts for Weaver being 20 and for Britt 4.
Among the papers I find another purporting to be an "amended and supplemental return" from Asheville Precinct, No. 6, signed Lyda, registrar, and Leonard, judge of election, showing the vote to be as follows: Weaver 304 marked votes, Britt 162 marked votes; Weaver 7 unmarked votes, Britt 2 unmarked votes.
If a paper from this precinct was returned 7th November, it does not appear in this file.
These "amended and supplemental returns" show 27 "unmarked votes" for Weaver and 6 "unmarked votes" for Britt. The "amended return" from Hazel Precinct, purporting to be signed by the registrar and C. D. Miller, judge of election, show 4 unmarked votes for Weaver and 1 for Britt, but in the margin I find this entry: "I can remember only one unmarked ballot, and that was for Britt. C. D. M."
Two of these amended returns bear date 15th November; the others are not dated. On the face of all these papers are the printed words, "Original returns of registrar and judges of election of votes for representative in Congress"; and the papers were filed by the board in the clerk's office as provided by law.
5. The county board in determining the result of the election estimated the "unmarked votes," and judicially declared the result. If these "unmarked votes" are legally included in the count, Weaver is entitled upon the face of the returns from the district to the certification of election; if illegally included, the plaintiff upon the face of the returns is entitled to such certificate.
6. I have not been able to find when all the "amended returns" were filed with the board, nor at whose instance. From the stenographer's report of the meeting held 16th November, I find that plaintiff propounded several interrogatories, among them being this: "At whose instance were these alleged amended and supplemental reports made?" But I find no answer. In this meeting a member of the board moved that these "amended and supplemental returns be received, accepted, and considered with the original returns in judicially determining and declaring the number of legal ballots cast for candidates for Congress," *Page 856 
but this motion was not formally voted on before the writ was (801) served. I further find on the 17th inst. the board were advised by counsel, learned in the law, that they had the legal right to consider the amended returns, and they did accept them as the returns of the registrars and judges of election.
7. I further find that the county board on Friday, 17th November, concluded its canvass of the votes cast in Buncombe County for a representative in the Sixty-fifth Congress and did then and there judicially determine the returns, declare the result, tabulate and sign and abstract, and certify said returns in the manner provided by statute, and included the "unmarked votes" set out in the "amended and supplemental returns."
Judgment was rendered in favor of the defendant.
The plaintiff appealed, and after argument the court of its own motion issued the writ of certiorari directing Judge Adams from the evidence taken before him to make an additional finding of fact as to what was done by defendant on 9 November, 1916, with reference to the congressional vote and whether on that day said board ascertained and judicially determined and declared the result of the vote for Congressman.
A copy of the order directed to Judge Adams was mailed to the plaintiff and his counsel and to the defendant and its counsel, and each party was notified that the court would hear motions or arguments on the return to the writ on Tuesday, 19 December, 1916, at 10 o'clock.
Judge Adams made the following return:
JAMES J. BRITT } v. } Further Finding of Fact. BOARD OF CANVASSERS. }
To the Honorable the Supreme Court of North Carolina:
In obedience to the writ of certiorari issued in this cause 14th December, directing the undersigned to make the additional finding of fact as to what was done by defendants on 9 November, 1916, with reference to the congressional vote, and whether on that day said board ascertained and judicially determined and declared the result of the vote for Congressman, I beg to submit the following, after due investigation of the record and affidavits, as such additional findings:
On 9 November, 1916, at 11 o'clock, after organization, the board proceeded to examine the returns from the various precincts in Buncombe County, or such returns as had been delivered to the board. Returns from Asheville (No. 1), West Asheville, and Sandy Mush (No. 1) precincts were not before the board on 9th November. While there *Page 857 
may have been a tentative tabulation by certain persons, among (802) those who attended the session of the board, based upon what they deemed to be the vote from those precincts, I find that no formal returns or other papers purporting to be returns from these precincts were received, accepted, or acted upon by the board on that date. On the other hand, the board stated that returns from these precincts were not before them on 9th November, and for that reason they would not canvass the congressional vote on that date, and in consequence continued the canvassing of the congressional vote until 11th November, and again until later dates, as shown in the former finding of facts. I further find that the board did not canvass and estimate and did not ascertain and judicially determine and declare the result of the vote for Congressman on 9th November, and that such judicial determination was not made until Friday, 17th November.
This 15 December, 1916. W. J. ADAMS, Judge.
By direction of Supreme Court, above copy of return to instantercertiorari is inclosed.
CLERK, ETC.
On Tuesday, 19 December, 1916, the plaintiff appeared, and was heard in his own behalf as to the effect of the return of Judge Adams to the writ ofcertiorari.
It is well at the outset to have a clear conception of the question for decision, and of the limitations on the power of this Court.
In the first place, we are not trying the title to the office of Congressman.
This is manifest from the fact that Mr. Weaver, the other contestant for the office, is not a party to this action, and if he was, the Court would be without jurisdiction, because it is provided in the Constitution of the United States, Art. I, sec. 5, that "Each house (Senate and House of Representatives) shall be the judge of the elections, returns, and qualifications of its own members," thereby withdrawing from the courts and vesting in Congress the power to pass on the title to the office of Congressman.
Nor is the question before us as to who is entitled to the certificate of election and commission, which but establish the right to the officeprima facie, and we can make no order in reference to the certificate and *Page 858 
(803) commission, because the State Board of Canvassers ascertain and declare the result of an election for Congressman and certify the result to the Secretary of State, who issues a certificate of election, on which the Governor issues a commission; and none of these officers are parties.
The only parties are Mr. Britt, the plaintiff, and the board of canvassers of Buncombe County, the defendant, and the only object of the action is to compel by writ of mandamus the members of the defendant board to reassemble and to certify as the result of the election in Buncombe County that the plaintiff received 4,037 votes for Congress and his opponent 4,325 votes.
That the action is for the remedy by mandamus and not by injunction appears from the prayer of the complaint, which asks that a peremptory mandamus issue from the writ issued by Judge Shaw, which is entitled "alternative mandamus" and is in the form of the writ of mandamus, and by the relief sought, which is not to restore the plaintiff to his previous
condition, changed by the wrongful act of the defendant, which is the office of the mandatory injunction, but to compel the defendant to do an act which it has refused to do, which is the function of the writ of mandamus. 3 Pom. Eq. Jur., sec. 1359.
The action was commenced in Buncombe County and the alternative writ of mandamus was issued by Judge Shaw, resident judge of the Twelfth and holding the courts of the Eighteenth Judicial District, returnable before Judge Adams, holding the courts of the Nineteenth District, of which Buncombe County is a part.
We are of opinion Judge Shaw was without authority to issue the writ, for the reason stated by Clark, C. J., in Moore v. Moore, 131 N.C. 371, that "Under our rotating system the judge holding by rotation the courts of a district has, during the six months he is assigned thereto, the sole jurisdiction therein, just as the resident judge had when there was no rotation, except in the cases otherwise specifically provided by statute; and these exceptions in civil cases are restricted to restraining orders and injunctions to the hearing and appointment of receivers. Habeas corpus
proceedings are an exception, also, but this is a prerogative writ."
We will not, however, rest our decision on this ground, but as no motion was made to quash the writ before Judge Adams, and as the action itself was properly constituted, will deal with it as if an original application for the writ had been made before Judge Adams.
The gravamen of the complaint is that the defendant, the board of canvassers, met on 9 November, 1916, and then and there canvassed the returns and then and there found and declared that the plaintiff had received in Buncombe County 4,037 votes, and that Zebulon Weaver *Page 859 
received 4,325 votes, and that the said board had refused to (804) announce, certify, and proclaim said canvass and result.
The defendant denies that the result was ascertained or declared on 9th November, and alleges that there was an adjournment on that day because of the fact that the returns from three precincts were not present and that it took no final action until an adjourned meeting on 17th November, at which time it completed the canvass of all the returns from the county and ascertained the result to be that the plaintiff received 4,043 votes and his opponent Weaver 4,353 votes, and that they duly certified the same to the proper officers.
Judge Adams has found the fact, thus in controversy, with the defendant, and his finding is conclusive upon us, as the statute regulating applications for mandamus (Rev., sec. 824), after providing for the return of the summons, says: "At which time the court, except for good cause shown, shall proceed to hear and determine the action, both as to law and fact: Provided, that when an issue of fact is raised by the pleading, it shall be the duty of the court, upon the motion of either party, to continue the action until said issue of fact can be decided by a jury at the next regular term of the court."
The statute vests the judge before whom the summons is returnable with the power to determine the fact, unless there is a demand for a jury trial; and as the plaintiff has made no such demand, we must accept the fact as established, for the purposes of this appeal, that the defendant board did not ascertain and declare the result of the vote on 9 November, 1916, and that it did so on 17 November, 1916, and when we do so the plaintiff's action must fail because the fact upon which it rests has been found against him.
We not only have no power to reverse the findings of fact, but we have no authority to find additional facts, if inclined to do so, as the application for mandamus is "legal and not equitable" (26 Cyc., 141), and the power of this Court to review evidence and find facts is restricted under the present Constitution to appeals from "judgments final as well as interlocutory, which are exclusively equitable in their nature, and which a court of equity as a distinct and separate tribunal could alone formerly render." Young v. Rollins, 90 N.C. 134.
If, however we dealt with the question as the record stood before the return to the certiorari and without the specific finding against the plaintiff as to what occurred on 9th November, can we cause the board to reassemble and make return and certify the result as the plaintiff claims it to be?
In the first place, if we eliminate the fact found against the plaintiff as to what occurred on 9th November, mandamus is not the appropriate remedy for settling any conflicting claims in the pleadings. *Page 860 
(805) "Mandamus cannot be employed for the purpose of settling conflicting claims to an office. It is no part of its functions to determine contested elections. . . . A defense is sufficient which sets up that after the canvass another than the relator was declared elected, received the certificate of election, and qualified by taking the oath of office, notwithstanding a claim by the relator that he was properly elected, for when it becomes necessary to go beyond the returns and to consider questions touching the legality of the election, or of fraud, illegal voting, or the like, then mandamus is not the proper remedy, and it is necessary to resort to quo warranto or to such statutory proceeding as may be provided." 9 R. C. L., 1153 et seq.
This is a well considered statement, supported by numerous authorities, that the courts cannot on application for mandamus inquire into questions of fraud, illegal voting, illegality of the election, and the like, and that resort must be had by the aggrieved party to the action of quowarranto to try the title to the office, or, in this case, to the House of Representatives.
"Mandamus is a proceeding to compel a defendant to perform a duty which is owing to the plaintiff, and can be maintained only on the ground that the relator has a present clear legal right to the thing claimed, and that it is the duty of the defendant to render it to him. If it appears from the complaint that two persons are claiming the same duty adversely to eachother, against a third party, the writ does not lie (Tom. L. D., title "Mandamus," 3 Bun., 1452), and that for the plain reason that the title
must be decided between them before the defendant can know to whom the duty or thing is due." Brown v. Turner, 70 N.C. 103.
This last statement by Judge Bynum and concurred in by Pearson, C. J., in a contest over office, is very pertinent, and if sound as a legal proposition would alone justify a refusal to grant the prayer of the plaintiff, because it is there stated that the writ of mandamus will not lie if two persons are claiming the same duty adversely to each other against a third party, and on the facts as they appear to us, Mr. Britt and Mr. Weaver are claiming the same duty adversely to each other from the defendant board of canvassers, a third party, and there is reason and justice in the rule because otherwise relief may be had by mandamus, which would seriously affect the rights of another, when he has had no opportunity to be heard, and this action fitly illustrates it, as the plaintiff is asking that the board of canvassers take action, which may determine whether he or Mr. Weaver shall have the certificate of election, when Mr. Weaver is not a party to the action and cannot be heard. *Page 861 
There is also much conflict of opinion as to the power to compel (806) a board which has adjourned, to reassemble, but the weight of authority seems to be that this can be done for the mere purpose of requiring it to complete its labors, but that it cannot be done to compel it to reconsider its action (S. ex rel. Hudson v. Pigott, 24 A. and E. Anno. Cases, and extensive note), and on the facts found by the judge, the defendant board has performed its duties and certified the result.
If, however, mandamus is the proper remedy, and if the defendant board is not functus officio, and can be reassembled, what can the board be required to do?
The authorities are practically unanimous to the effect that the court has the power to compel officers to perform a ministerial duty, but that where the officer is vested with discretionary power, the court cannot control or interfere with his action.
The authorities are collected and the question fully discussed in the opinion by Justice Hoke in Board of Education v. Comrs., 150 N.C. 122, where he says: "It is recognized doctrine that the writ of mandamus is the appropriate remedy to enforce the performance of duty on the part of county officials, when the duty in question is peremptory and explicit, but that such a writ will not be granted to compel the performance of an act involving the exercise of judgment and discretion on the part of the officer to whom its performance is committed. In some of the books the principle is stated in this way: that the writ is only allowable when the duty is mandatory and the act sought to be coerced is ministerial in its nature; and while expressions are sometimes found that the performance of a duty to some extent discretionary will be controlled by this writ when it clearly appears that an officer has acted capriciously, an examination of these authorities will, we think, disclose that in cases involving the exercise of official discretion the order of the court in actions for mandamus has always been restricted to compelling an officer to act in a given case, and will never undertake to direct him as to how he shall act."
Mr. Justice Walker in Edgerton v. Kirby, 156 N.C. 347, says: "If a public officer fails to perform his legal duty to the public, mandamus will lie to compel him to do so, if it is a mandatory one, but not to control the exercise of a discretion given to him, for it is the nature of a discretion in certain persons that they are to judge for themselves, and, therefore, no court can require them to decide in a particular way or review their judgment by way of appeal, or by any proceeding in the nature of an appeal, since the judgment of the persons to whom the discretion is confided by law would not then be their own, but that of the court under whose mandate or compulsion they gave it. Attorney-General v. Justices ofGuilford, 27 N.C. 315; Barnes v. Comrs., *Page 862 
(807) 135 N.C. 27. . . . As to the power of a court of general jurisdiction to issue a mandamus for the purpose of controlling the discretion of a public officer, the case of U.S. v. Seaman, 17 How. (U.S.), 225, and Gaines v. Thompson, 7 Wallace, 347, may well be consulted, for they state the doctrine with clearness and accuracy. They deny the power where there is a discretion left to the officer as to how he will perform the duty, and so we have held. . . . This author (Tapping Mandamus) says that in no case does the writ lie `to compel a tribunal, judicial or administrative,' to render any particular judgment or decision, or to set aside one already rendered, but only to enforce the performance of a ministerial or mandatory duty. The writ is appropriate to compel subordinate courts or bodies (or even individuals, in a restricted class of cases), to proceed and determine matters pending before them and properly within their cognizance or jurisdiction, but it cannot compel them to do that which the law leaves them to decide according to their best judgment and discretion. Tapping, 35, 36. The plaintiff must try other ordinary remedies before he resorts to this unusual writ of compulsion."
The case of Johnston v. Board of Elections, ante, 162, is an instance of the exercise of the jurisdiction by the courts to compel the performance of a purely ministerial duty by mandamus. In that case the plaintiff Johnston and the defendant Pate were opposing candidates for the nomination as a member of the House of Representatives at a primary election. The election was held, the result tabulated, declared, published, and filed with the proper officers; there was no allegation of fraud or irregularity in the election, and it was held in an action to which Pate was a party that the board of elections could be compelled to perform the ministerial duty, involving the exercise of no judgment or discretion, of placing his name on the party ticket.
We turn, then, to the election law for the purpose of seeing what powers are vested in the county board of canvassers and what duties are imposed upon it, and we find by Revisal, sec. 4350, it is required to open and canvass and judicially determine the returns, stating the number of legal ballots cast in each precinct for each officer, the name of each person voted for, and the number of votes given to each person for each different office, and to sign the same, and that it is vested with power and authority to judicially pass upon all facts relative to the election and to judicially determine and declare the result of the same, and to send for papers and persons and examine the same.
This section clearly vests the board with discretionary power and imposes the duty of exercising its judgment, and, if so, we cannot, upon an application for a mandamus, interfere with the exercise of its judgment and discretion, nor can we review its judgment except in an action to try *Page 863 
the title to the office by quo warranto, which, as we have seen, is (808) not applicable to the office of Congressman.
If the matter was properly before us and we had jurisdiction to decide it, we would hold as to the congressional ticket, which has only one name on it, that all unmarked ballots ought to be counted for the respective candidates, because the purpose of the election is to ascertain the will of the voter, and the marking of the ballot can only serve a useful purpose in ascertaining this will when there are more names than one upon a ballot.
The statute was evidently copied from a statute requiring the names of all the candidates to be on one ballot, and the requirement as to marking was for the purpose of identifying and indicating the choice of the voter, and while such provisions are usually held to be mandatory, "the doctrine of all the cases is that the intention of the voter, as gathered from the ballot itself or other surrounding circumstances of a public character, is to control." 15 Cyc., 362.
The voter is interested in the question as well as the candidate, and when his will is expressed, it ought not to be set aside on light grounds, and no one can doubt what his purpose and intention was when he voted a congressional ticket with only one name on it.
We would also hold that what are referred to as additional or supplemental returns ought not to have been considered, if, as the plaintiff contends, they were made up after the registrar and pollholders had fully performed their duties, and without calling the registrar and pollholders together in a body.
If they had the right to act at all, they could only do so in a regular meeting called for that purpose, and when all were present or had an opportunity to attend.
We have carefully considered the contentions of the parties and are of opinion that the judgment must be affirmed.
We have not discussed the charges and counter-charges of illegal and wrongful conduct, because their consideration properly belongs to another tribunal.
The courts are slow to interfere with the action of officers appointed by law to conduct elections and to declare the result, and will not do so except in extreme cases and when the duty is clear, because if the jurisdiction is once recognized they may by injunction restrain the holding of an election and prevent an expression of the popular will, or after the election is held may delay the declaration of the result or defeat it.
Affirmed.
Cited: In re Fain, 172 N.C. 794 (5c); Brown v. Costen, 176 N.C. 66 (9c);S. v. Pharr, 179 N.C. 699 (1p); Rowland v. Board of *Page 864 Elections, 184 N.C. 85 (8j); Bell v. Board of Elections, 188 N.C. 315 (9p);Board of Education v. Comrs., 189 N.C. 652, 653 (8c); Umstead v. Board ofElections, 192 N.C. 142 (8c); Hayes v. Benton, 193 N.C. 382 (8c); RoadComrs. v. Comrs. of Transylvania, 194 N.C. 819 (6c); Bouldin v. Davis,197 N.C. 733 (7p); Wilkinson v. Board of Education, 199 N.C. 673 (8c);Barbee v. Comrs. of Wake, 210 N.C. 719 (7d); Burgin v. Board of Elections,214 N.C. 146 (11c); Jarrell v. Snow, 225 N.C. 433 (9c); States' RightsDemocratic Party v. Board of Elections, 229 N.C. 194 (9j).
(809)