No. 12,224.

## Washington County High School District *v.* Board of County Commissioners of Washington County, et al.

Decided December 17, 1928.   Rehearing denied January 11, 1929.

Messrs. PELTON & CHUTKOW, Mr. T. E. MUNSON, for plaintiff in error.

Mr. FRANK D. ALLEN, for defendants in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE Washington county high school district, proceeding under the Declaratory Judgments Act (S. L. 1923, c. 98), brought this suit against the board of county commissioners of Washington county, and others, to have determined the rights, if any, of the county high school district under the Teachers' Salary Act of 1921 (S. L., c. 214, C. L., § 8446, et seq.), as amended. The plaintiff contends that the Salary Act applies to county high school districts; the defendants contend that it does not.

Section 1 of the Salary Act (C. L. § 8446) provides that the board of directors or board of education of every school district shall certify to the county superintendent of schools the number of teachers employed, or to be employed, in the school district, and the amount of money necessary to pay each teacher a salary of $75 per month. The county superintendent shall transmit to the secretary of each school district a summary of said estimates and a certification as to the required county levy. Section 2 (C. L. § 8447) requires the county superintendent to certify to the board of county commissioners and to the county treasurer the amount necessary to be levied to raise the aggregate of the amounts certified to him by the boards of education and the boards of directors, together with the amount required by each school district. Section 3 (C. L. § 8448) requires the county commissioners to levy upon all taxable property in the county a tax

sufficient to raise the aggregate amount so certified, not exceeding five mills. Section 4 (C. L. § 8449), as amended by the Act of 1923 (S. L., c. 166), which in turn was amended in 1927 (S. L., c. 159), provides that the fund so raised shall constitute a separate fund to be known as the general school fund, and that it shall be apportioned among the several school districts in the amounts and proportions certified by the county superintendent. Provision is made for the number of teachers in districts according to school population, based upon the school census. Section 5 (C. L. § 8450) provides that the general school fund shall be used for the purpose of paying teachers' salaries only. Section 6 (C. L. § 8451) fixes the minimum salary to be paid to ''any school teacher in the public schools,'' except substitute teachers, part time teachers, and teachers of special subjects, at $75 per month. It also fixes at a higher figure the minimum salaries of teachers having certain specified educational preparation. Section 7 (C. L. § 8452), amended by the Act of 1923 (S. L., c. 166), which, in turn, was amended in 1927 (S. L., c. 158), provides that if in any county the maximum levy of five mills shall be insufficient to pay the minimum salary of $75 per month to every public school teacher within the county, the county superintendent shall certify that fact to the state superintendent of public instruction, stating the amount necessary to supply the deficiency. If the state superintendent, after investigation, shall be convinced of the necessity, he shall apportion to the county, ''in addition to the amount otherwise specified,'' a sum of money sufficient to supply the deficiency. Upon certificate of the state superintendent, the state auditor shall draw his warrant in favor of the county treasurer for such sum, to be paid out of the public school income fund. This sum shall be placed in the general school fund and used for the payment of teachers' salaries only. The section provides further that ''no school district shall share in such distribution which has not made a special school tax levy of five mills or more

for the same year." Such is the act we are called upon to construe. The district court held that the act does not apply to county high school districts, and, therefore, that the plaintiff is not entitled to have the county commissioners levy a tax to pay the minimum salary to the teachers in the Washington county high school district. Is that construction right? The question is not easy to answer. The school laws require revision, so as to harmonize their many provisions. In the present case strong arguments can be made—in fact, have been made—on each side of the question, based upon different provisions of the school laws.

1. An argument is based upon the title of the act, "An act relating to the salaries of public school teachers and providing funds with which to pay the same." True, it is broad enough to include teachers in county high school districts; but the provisions of an act are not always so broad as the title. Thus, the Teachers' Salary Act of 1919 (S. L., c. 177) is entitled "An act relating to the increase of salary for the teachers of the State of Colorado," yet the act is specifically limited to school districts of the first, second and third classes. The title, of course, is not controlling in this case. However, we have given it due consideration.

2. Another argument is based upon the following words in section 6 of the act under consideration (C. L. § 8451): "The minimum salary that shall be paid to any school teacher in the public schools, except substitute teachers, part time teachers, and teachers of special subjects, shall be seventy-five dollars ($75.00) per month." It is said that these words indicate an intention to include teachers in county high school districts. The language is broad. It must be borne in mind, however, that the Teachers' Salary Act of 1919 (confined to districts of the first, second and third classes) fixed the minimum salary at $60 per month in districts of the third class and at $75 per month in districts of the first and second classes. It is not unlikely that, in passing the Teachers' Salary Act

of 1921, the legislature merely intended, in using the quoted language, to make the salary uniform in all three districts. At least, this is a permissible construction; and in view of other considerations, to which we will call attention farther on, we believe it to be the true construction.

3. Counsel for the plaintiff says, "Just why the legislature should establish a minimum salary for certain teachers and not for others, is hard to see." In 1919, as we have seen, the legislature, for reasons satisfactory to it, did discriminate between high school districts on the one hand, and districts of the first, second and third classes on the other, by establishing minimum salaries for teachers in districts of the first, second and third classes only, thereby excluding teachers in high school districts. Nor are reasons for such discrimination lacking. A high school education is desirable, but in a republic an elementary education is an absolute necessity. This distinction is recognized in our school laws. Section 8468, C. L., provides: "That in all school districts of this state, all parents, guardians and other persons having care of children shall instruct them, or cause them to be instructed, in reading, writing, spelling, English grammar, geography and arithmetic. In such districts, every parent, guardian or other person having charge of any child between the ages of eight (8) and sixteen (16) years, shall send such child to a public, private or parochial school for the entire school year during which the public schools are in session in such districts; Provided, however, That this act shall not apply to children over fourteen (14) years of age where such child shall have completed the eighth grade, *or may be eligible to enter any high school* in such district, or" in certain other cases. From this it appears that when a child is eligible to enter high school the compulsion ceases. Sections 8469 and 8480, C. L., forbid the employment in business of children under 14 years of age during school hours, except in certain cases. Section 8470, C. L., enacts: "All minors

over the age of 14 years and under the age of 16 years who cannot read and write the English language, shall attend school at least one-half day of each day, or attend a public night school, or take regular private instruction from some person qualified, in the opinion of the county superintendent of schools, in which such district or the greater portion of the same lies, until such minor obtains a certificate from such superintendent that he or she can read at sight and write legibly, simple sentences in English.'' Children who do not attend school as required are declared to be juvenile disorderly persons (C. L. §§ 8471, 8475). Truant officers are appointed to see to the enforcement of the law (C. L. §§ 8472, 8473, 8474). Section 8481, C. L., is as follows: ''Every parent or guardian, or other person in the state of Colorado, having control of any child or children between the ages of eight (8) and fourteen (14) shall be required to send such child or children to a public school, or private school taught by a competent instructor, for a period of at least twelve (12) weeks in each year, at least eight weeks of which time shall be consecutive, unless such child or children are excused from such attendance by the board of the school district in which such parent, guardian or person having control resides, upon its being shown to their satisfaction that such child's bodily or mental condition has been such as to prevent attendance at school, or application to study for the period required; Provided, That if such parent or guardian is not able, by reason of poverty, to properly clothe any such child, it shall be the duty of the school board of the proper district, upon the fact being shown to their satisfaction, to furnish the necessary clothing and pay for the same out of the school fund of such district, by warrant drawn as in other cases, or that such child or children are taught at home in such branches as are usually taught in the public schools, subject to the same examination as other pupils of the district in which the child resides; or that there is no school taught within two miles by the nearest traveled road.'' Penalties are

provided to insure observance of the law by parents, guardians, employers, school directors, and others (C. L. §§ 8469, 8470, 8474, 8475, 8477, 8478, 8480, 8482, 8483). In this state elementary education is compulsory; high school education, optional. The latter is a privilege; the former, both a privilege and a duty. It may have been considerations such as these that caused the legislature, in 1919, to give to districts of the first, second and third classes the assistance afforded by the Teachers' Salary Act of that year, and withhold such assistance from county high school districts. And similar considerations may well have induced the legislature to carry out the same policy in the Teachers' Salary Act of 1921.

4. The name of the governing body of a county high school district is declared by statute (C. L. § 8402) to be "the high school committee." The governing body of ordinary school districts is variously designated by statute as "boards of directors" and "boards of education." Throughout the Teachers' Salary Act of 1921, as well as in the Teachers' Salary Act of 1919, all certificates on behalf of the school districts are required to be made by "the board of directors or board of education." There is no mention of any high school committee. This, of course, taken by itself, is not of controlling importance. Where it is clear that a statutory provision is intended to relate to a high school district, the purpose of the act will not be defeated by the fact that the words "district board of directors" are used and there is no reference to the high school committee. *People ex rel. v. Buckland,* 84 Colo. 240, 269 Pac. 15. But such is not the case here. The fact that in the act before us the legislature used the names assigned by statute to the governing body of ordinary school districts, and avoided the use of the statutory name of the governing body of county high school districts, is significant, when considered in connection with other provisions of the laws relating to schools. No one section of the school laws furnishes a conclusive answer

to the question before us.  To ascertain the legislative intent in the act we are considering, we must view the school laws as a whole.

5.  In his opinion, the trial judge said that, "There is no plan in the 1921 or 1923 acts  *  *  *  for determining the number of teachers that may be included under the general $75 a month salary provision in the county high schools."  It would seem that the provisions relating to the number of teachers indicate that in passing the Teachers' Salary Act the legislature did not have in view county high school districts, and did not intend to include such districts within the provisions of the act.  The amendatory act of 1927 (S. L., c. 159), which, in this respect, carries out the same general plan of the amendatory act of 1923 (S. L., c. 166), after providing for small districts, enacts that in school districts having a school population of more than 100, no greater amount of the teachers' salary fund shall be apportioned than is necessary to pay the salary to 4 teachers plus 1 teacher for each additional 40, or major fraction thereof, in excess of 100 of the school population of the district.  School population is based upon the school district census.  The school population of the Washington county high school district is 3,300.  These provisions, reasonable as applied to ordinary school districts, are inapplicable to county high school districts.  The suggestion that the school authorities may be relied upon not to employ the maximum number of teachers, is not helpful.  Why have a limit for any of the ordinary school districts?  The question is, Did the legislature intend to have the act apply to county high school districts?  In adopting a plan applicable to ordinary school districts and inapplicable to county high school districts, the legislature may be assumed to have included the former and to have excluded the latter from the operation of the act.  This view is fortified by the following consideration:  A school district of the third class (an ordinary school district) is permitted to main-

tain a high school. *Merrill v. Barr,* 73 Colo. 87, 89, 213 Pac. 576. Both amendatory acts (S. L. 1923, c. 166, and S. L. 1927, c. 159) provide that school districts of the third class maintaining high schools shall be permitted to have an apportionment for an additional teacher for each 20, or major fraction thereof, of high school *enrollment.* If the legislature intended to include county high school districts in the act, no doubt it would have made a similar apportionment provision with reference to them.

6. We have already stated the provisions of chapter 158 of the Session Laws of 1927. Among those provisions is one to the effect that no school district shall share in such distribution which has not made a special school tax levy of five mills or more for the same year. But the limit of the annual levy for a county high school tax is four mills (C. L. § 8412). There is no limit of four mills in the case of ordinary school districts. Here again we see an intent to include ordinary school districts and to exclude county high school districts from the benefits of the Teachers' Salary Act.

7. Counsel for the plaintiff call our attention to the administrative construction of the act, and stress the importance of giving weight to that construction. In this matter the superintendent of public instruction has followed the advice of the attorney general. The record contains an opinion by the attorney general to the effect that the Teachers' Salary Act applies to county high school districts. That opinion is very brief, and is not persuasive. The Attorney-General was invited by us to file a brief in this case, but, owing no doubt to the great pressure of business in his office at this time, he has been unable to do so. We are not unmindful of the weight due to administrative construction where the meaning of an act is in doubt. In the present case, however, we have no doubt about the construction that should be given to the act before us.

From an examination of all school laws that bear upon the question, we are satisfied that the judgment of the

district court is right. The judgment, therefore, is affirmed.

MR. CHIEF JUSTICE DENISON did not participate in the decision.

*On Rehearing.*

MR. JUSTICE BUTLER.

1. In the consideration of this case we have not, as counsel fear we have, overlooked the case of *Board of Commissioners v. Basalt Union High School District,* 82 Colo. 438, 261 Pac. 457. There the question was whether or not the Basalt union high school district was a lawfully existing district. The county superintendent of schools of Pitkin county and the county commissioners of that county contended that it was not. For that reason the former refused to certify, and the latter refused to levy, the tax called for by the union high school district, and we sustained the judgment directing them to do so. Among the items to be levied was one for salaries under the Teachers' Salary Act of 1921, as amended in 1923. But the question as to whether or not that act applies to union high school districts was not raised and was not decided. The attitude of both counsel and court was that if the district was a lawfully existing district, the writ of mandamus should issue; otherwise, not.

2. In paragraph 3 of the main opinion we called attention to considerations that may have caused the legislature, in 1919, to give to school districts of the first, second and third classes the assistance afforded by the Teachers' Salary Act of that year, and withhold such assistance from county high school districts, and that also may have induced the legislature to carry out the same policy in the Teachers' Salary Act of 1921. Counsel contend that these considerations would apply with equal force to high schools organized by school districts of the first, second and third classes; that the act does apply to such districts, and therefore to teachers in the

high schools organized by those districts; and that this results in a discrimination between the teachers in the two kinds of high schools. That may be so. But we were presenting considerations that may well induce a legislature to give to teachers in primary schools the benefit of the act and withhold such benefit from teachers in high schools. True, in giving such benefit to districts of the first, second and third classes, teachers in high schools organized by such districts receive a benefit withheld from teachers in county high school districts. The legislature, if it gave any weight to considerations such as we suggested in our main opinion, may have believed that other considerations are of controlling weight where high schools organized by school districts of the first, second and third classes are concerned. Be that as it may, the legislature, in 1909, did in fact discriminate between such districts and county high school districts; and we must assume that it had satisfactory reasons for doing so. And it is our opinion that in the Act of 1921, as amended in 1923, the same policy is carried out. If the General Assembly—it is now in session—should consider that the discrimination is unfair, it is within its power to remedy such condition.

Rehearing denied.

Mr. Justice Adams dissents.