No. 14,912.

.PEOPLE EX REL. GRIFFITH *v*. BUNDY ET AL.
(109 P. [2d] 261)

Decided December 31, 1940.   Opinion filed January 7, 1941.

Mr. PHILIP HORNBEIN, Mr. FRED S. CALDWELL, Mr. THEODORE EPSTEIN, Mr. TELLER AMMONS, for relator.

Mr. HARRY BEHM, Mr. LEONARD M. HAYNIE, Mr. CHARLES R. CORLETT, Mr. FRANK BURRIS GOUDY, Mr. MORTIMER STONE, Mr. ALDEN T. HILL, Mr. JAMES D. LEWIS, Mr. M. O. DE SOUCHET, Mr. E. TYNDALL SNYDER, Mr. ROBERT G. SMITH, Mr. GAIL L. IRELAND, Mr. R. HICK-MAN WALKER, Mr. CLARENCE L. IRELAND, Mr. E. B. EVANS, Mr. GEO. A. CROWDER, Mr. ROBERT L. GEE, Mr. DONALD H. MEYER, Mr. THEODORE A. CHISHOLM, Mr. C. E. ROBIN-SON, Mr. MALCOLM LINDSEY, Mr. HENRY E. ZARLENGO, Mr. DUKE W. DUNBAR, Mr. GEORGE C. EPPERSON, Mr. GEORGE C. TWOMBLY, Mr. CLAYTON C. RICKEL, Mr. STO-TON R. STEPHENSON, Mr. WILLIAM B. PAYNTER, Mr. LIONEL FISHER, Messrs. ANDERSON & ANDERSON, Mr. FRANK L. HAYS, for respondents.

Mr. JEAN BREITENSTEIN, Mr. ERSKINE R. MYER, amici curiae.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THIS is an original proceeding in mandamus by relator, a candidate for the office of attorney general in the 1940 election, to compel the boards of county canvassers of seven of the sixty-three counties of Colorado and the election commission of the City and County of Denver, which is vested with kindred functions therein, to reconvene and change the abstract of votes for the office of attorney general in such counties and in the City and County of Denver by excluding therefrom some 2800 absent ballots designated by name and number in the petition and recounting the remaining ballots of absent electors. Relator prays that respondent boards be ordered to then certify and transmit such amended abstract of votes to the secretary of state in lieu of the abstract heretofore certified and transmitted by them and that the original abstract be recalled from the secretary of state. The petition alleges that if such exclusion be made and the remaining absent voters' ballots are recounted by the respondent boards, the result of the 1940 election for attorney general as heretofore certified by the sixty-three counties of the state, which shows the respondent Ireland, the opposing candidate, leading by 199 votes, will be changed and the relator will be elected to such office by a majority of 411 votes.

As a basis for exclusion from the count the petition charges that the challenged absent voters' ballots were illegal and void because of the failure of the voter to comply with what are alleged to be the mandatory requirements of the absent voters' statute (§§214, 217 to 220 inclusive, chapter 59, '35 C.S.A., and §§215 and 216, chapter 59, 1939 Supp. to '35 C.S.A.), which defects it is said appear on the face of the documents in the hands of the respondent boards. Specifically it is pleaded that of the aggregate of approximately 2800 ballots ques-

tioned, in excess of 1800 are defective in this, that either in the application for the absent voter's ballot, or in the affidavit of the voter made when the vote was cast, the voter failed to strike from the regular form provided, one of the following alternative statements therein printed: (1) That he will be absent from his county on the day of said election, or, (2) that he is too seriously ill to attend the polls (See, §215, supra), and permitted both statements to remain in the paper or papers accompanying his ballot; of nearly 100 ballots it is charged on information and belief, that some illegality exists which, however, is not specified, since relator alleges the boards involved refused to permit inspection by him after the canvass was completed (See, §217, supra); it is charged that in three of the counties 115 ballots, which were never in the mail, were counted (See, §216, supra), and that four counties counted 370 ballots of voters who failed to duplicate their signatures on the duplicate applications for such ballots (See, §216, supra). Asserting that the classes of officials authorized to administer oaths out of the state are limited to notaries public and clerks of courts of record by section 6, chapter 115, '35 C.S.A., the petitioner claims the invalidity of some forty ballots in connection with the casting of which a voter absent from the state made affidavit before other officials (See, §§217, 218, supra). The alleged illegality of the remainder of the questioned ballots in smaller groups are variously and diversely premised on alleged derelictions in the form of the affidavit, the deficiency of signatures thereon, the question of the power or identity of the official receiving the vote or administering the oath, discrepancies between the venue and the jurat in the affidavit attached thereto, nonconformance with the requirements of section 216, supra, concerning postmarks on the return envelopes, and similar objections.

The respondent Ireland, who was served with a copy of the petition before the same was tendered for filing, objected to the filing of such and questioned the

jurisdiction of this court to entertain the proceeding. After oral argument and the submission of briefs his objections were overruled and we directed the issuance of the alternative writ returnable at 10 o'clock a.m. December 31st, 1940. In response, various returns were filed, the majority of which contained general demurrers. On said last named day relator asked that the Secretary of State be made a party and restrained from transmitting the abstract of the state vote to the speaker of the House of Representatives as is provided by article IV, section 3 of the Colorado Constitution, and section 250, chapter 59, '35 C.S.A. After oral argument on such motion this court, on December 31st, denied the same and thereupon ordered that the various demurrers to the writ be sustained and the writ dismissed. In such order it was stated that the opinion of the court would be filed later and, accordingly, we now express the reasons for the action so taken. Obviously, although reached subsequently to the disposition of the motion for the joinder of the Secretary of State and injunctive relief, our conclusion that the demurrers should be sustained renders unnecessary a discussion of such motion and we shall consider only whether the extraordinary relief sought can be accorded under the allegations of the petition.

Whether mandamus will lie to review the actions of canvassing or election boards in including or excluding ballots, of necessity depends upon the nature of the act sought to be compelled and the powers, functions and duties of such boards. In conformity with the ordinary rule that mandamus lies to enforce the performance of a ministerial act as distinguished from a judicial or discretionary one, the courts have generally held that where the act of the canvassing board or election board in rejecting or counting ballots is ministerial, mandamus is available to compel or control such act. Accordingly, in *Lehman v. Pettingell,* 39 Colo. 258, 89 Pac. 48, upon the authority of *Kindel v. Le Bert,* 23 Colo.

385, 48 Pac. 641 (See, also, *People ex rel. v. White,* 88 Colo. 229, 294 Pac. 535), we held that the duties of the county board of canvassers in counting and certifying the result of the vote as certified to them by the precinct judges and clerks of election, were purely ministerial acts and by mandamus compelled certification of the vote by the county board in accordance with the certificate of the precinct officers. However, where the questioned action of such boards is deemed to involve judgment or discretion, it is equally certain the board's determination is conclusive so far as mandamus as a method of review is concerned, and the writ will not lie. *Leary v. Jones,* 51 Colo. 185, 116 Pac. 130; *Orman v. People ex rel.,* 18 Colo. App. 302, 71 Pac. 430. Thus, while a court in a mandamus proceeding may compel action, it cannot direct an election or canvassing board *how* it shall act where discretion with respect to the function involved reposes in it; otherwise, as is said in the opinion in *Orman v. People, supra* (page 309), by mandamus "The judiciary could usurp the functions of all canvassing boards, and unduly control, by controlling their membership, both the executive and legislative departments, co-ordinate and intended to be independent branches of the state government."

■ Section 217, supra, relating to the procedure for counting ballots of absent voters is as follows: "The county clerk or election commission of the county wherein such voter resides shall receive such ballot and shall safely keep and preserve the same unopened in his office until the board of county canvassers canvass the vote according to law, at which time the board of county canvassers in the presence of the county clerk or election commission and of a watcher chosen by each of the major political parties shall open said envelope and record said absent voter's name with his precinct in an absent voter's poll book and shall canvass said absent voter's ballot in the same manner, as near as may be, as boards of election canvass votes, providing said can-

vassing board shall find the name of said absent voter registered in his precinct as required by law and not as having voted at said general or primary election. The board of canvassers shall add the total of said absent vote to the candidates or questions entitled thereto in arriving at the result of the general or primary election; provided, that nothing herein contained shall be construed to deny the right of any candidate at said election to be present either in person or by a representative authorized in writing, and witness said canvassing of such vote; and, provided further, that any such candidate shall have the right to inspect any and all records concerning said voter's application and registration prior to election day." A perusal of this section immediately discloses that in contrast with its regular duties as canvassers of the precinct returns previously counted and certified by the precinct judges and clerks as contemplated by section 246, chapter 59, '35 C.S.A., the board of county canvassers, in the canvass of the ballots of the absent voters, acts as a *board of election* in counting and disposing of such absent vote. Under the provisions of our statute ordinary election judges have both judicial and ministerial duties to perform. *Leary v. Jones, supra.* In the opinion in that case (page 197), it is said: "The actual count, and determination of the result of the count of the ballots, when honestly exercised in good faith, has always been the exclusive province of the judges of election, as where there is a dispute as to the count, or the result of a ballot, to be determined from what is shown upon its face, and their disposition of it, so far as their action is concerned is judicial, * * *."

By the express provision of section 217, supra, as is above mentioned, such judicial discretion as rests in ordinary election boards is accorded county canvassing boards in counting the ballots of absent voters. Analagously, in totalling such absent vote and in adding the result of the vote of the candidates or questions entitled

thereto, it would seem clear that ministerial duties are performed.

In the proceeding before us there is no charge that the respondent boards failed to discharge such dual duties or make return of the results, nor is it alleged that such boards acted fraudulently, dishonestly or in bad faith. The complaint is that in functioning they decided wrongly and counted ballots which they ought not to have counted. As hereinbefore stated, such judicial conclusions as they have reached and certified, even if erroneous, cannot be reviewed by a proceeding in mandamus. In addition to the authorities cited supra, see, also, the very complete annotations on the subject in 107 A.L.R., p. 618. Particularly pertinent to the legal situation here presented is the following excerpt from *People ex rel. Haverly v. Hanes*, 90 N.Y.S. 61, quoted and approved by this court in *Leary v. Jones, supra:* "Inspectors of election have both judicial and ministerial duties to perform. In determining what ballots shall be counted for or against any candidate, or any question voted on, or what ballots shall be rejected, they act judicially. They may, perhaps, be required by mandamus to perform merely ministerial acts in a particular way, and they may also be required to exercise their judicial functions; but they cannot be required by a common-law mandamus to decide in a particular manner. * * * It is the performance of a judicial act on the part of the inspectors which is complained of in this case; not the failure on their part to act judicially, but the judicial conclusion reached by them; and it is this judicial conclusion which it is sought to have changed. The inspectors have performed the judicial act complained of. They may not have reached a correct conclusion, but they have acted and exercised their judgment, and the conclusion reached by them cannot be reviewed herein."

■ In his briefs and in oral arguments on respondent Ireland's objections to filing and jurisdiction, where

the questions presented were generally similar to those raised by the demurrers, the relator, in effect, argued that where a statute directs the manner in which a vote shall be canvassed, upon the appearance of deviation or omission therefrom, however minute, the board ipso facto must eliminate such ballot from the count. Patently, it seems to us that this asserted basis for rejection admits some judicial discretion in the board and instead of indicating the propriety of mandamus suggests its unavailability under the rules we have announced. It may be that if such boards attempted to act arbitrarily from undue motives or in gross error, a court lawfully might interpose to prevent a failure or miscarriage of justice, but the allegations of the petition before us do not present such a situation. If in counting the absent votes the canvassing board erroneously includes invalid ballots or excludes valid ones, any candidate affected has the right to contest such challenged act in the tribunal granted jurisdiction by the Constitution or statute. Such is the ordinary practice with reference to votes which are alleged to be illegally counted by precinct election boards, and the circumstance that section 217, supra, analagously provides for the presence of watchers and candidates at the count of the absent vote with opportunity to make such notes as they desire concerning votes counted or rejected, indicates that the legislature intended that any controversy arising from the canvass of absent ballots alleged to be illegal should be settled by contest proceedings. That such has been the ordinary practice is shown by *Bullington v. Grabow,* 88 Colo. 561, 298 Pac. 1059; *Israel v. Wood,* 93 Colo. 500, 27 P. (2d) 1024, 98 Colo. 495, 56 P. (2d) 1324, where some questions similar to those raised by the issues before us were determined. Article IV, section 3 of our Constitution expressly requires that contests of election for the office of attorney general shall be determined by the two houses of the general assembly on joint ballot, in such manner as may be prescribed by law. Sections 271 and

272, chapter 59, '35 C.S.A. fully and adequately promulgate a method of procedure by which such a contest may be tried before such body. In the general conception of the term "contest" the petition before us likely states valid grounds therefor, if not for mandamus, and from the character of the allegations it is certain adequate relief could be granted in a contest proceeding. This circumstance constitutes a second basis for sustaining the demurrers against the writ, since mandamus, being an extraordinary writ, is generally held not to lie where there is another specific remedy provided by statute or Constitution, and in election cases this applies to the availability of the remedy of contest. See, *State ex rel. Toon v. Thompson,* 204 Ind. 560, 185 N.E. 117; *Watson v. Gattis,* 188 Ark. 376, 65 S.W. (2d) 911; *Britt v. Board of Canvassers,* 172 N.C. 797, 90 S.E. 1005.

The foregoing reasons induced the entry of our order of December 31, 1940, sustaining the demurrers and dismissing the writ.

MR. JUSTICE OTTO BOCK concurs in the result.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE FRANCIS E. BOUCK dissent.