## No. 15,880.

HALL ET AL. *v.* CITY AND COUNTY OF DENVER ET AL.
(190 P. [2d] 122)

Decided February 9, 1948.   Rehearing denied March 1, 1948.

Mr. GEORGE F. DUNKLEE, Mr. EDWARD V. DUNKLEE, Mr. DAVID V. DUNKLEE, for plaintiffs in error.

Mr. J. GLENN DONALDSON, Mr. MALCOLM LINDSEY, Mr. WAYNE D. WILLIAMS, for defendants in error.

MR. JUSTICE JACKSON delivered the opinion of the court.

PLAINTIFFS in error, as plaintiffs in the trial court, instituted a proceeding in the nature of mandamus to review the action of the Election Commission of the City and County of Denver in refusing to approve and certify a petition for the submission of an initiated measure to the electorate at the next ensuing city election. The complaint alleges that the proposed initiated measure undertakes to declare what is known as the "Old Court House Square" in Denver to be a public park. Motions to dismiss and to strike were filed by all of the defendants. The trial court sustained the motions, but afforded plaintiffs an opportunity to amend; the latter, however, elected to stand upon their complaint as drawn; judgment of dismissal was duly entered, to review which, plaintiffs bring the case here by writ of error. The case was docketed here on the 31st day of March, 1947; the reply brief was filed on December 29, 1947. The case was then immediately set for oral argument, which was had on January 5, 1948.

The record as presented here, therefore, consists merely of the above mentioned complaint of plaintiffs, motions to dismiss and strike filed by defendants, and the trial court's order and opinon sustaining the motions to dismiss and to strike:

From the complaint it appears that the circumstances giving rise to this case began when plaintiffs filed with the Election Commission of the City and County of Den-

ver their petition containing the names of 5,091 electors, which they allege is more than the required five per cent in number of the voters in the last preceding municipal election. The Election Commission, as its first ground for not approving and certifying the petition, held 3,719 of the signatures to be invalid, leaving 1,372 signatures of electors presumably valid—the latter number being considerably less than the required five per cent. Plaintiffs, in their complaint, alleged that this adverse ruling of the Election Commission was made after a hearing at which both petitioners and certain protestants to the petition appeared; that the protest filed with the commission was invalid; that the hearing determining whether certain petitioners were valid electors was conducted improperly and that the commission erred in following the testimony of a certain handwriting expert and also in throwing out names of certain married women who had signed as petitioners using their respective husbands' complete names preceded by the word "Mrs.", rather than using their respective christian names. The complaint appears to make no reference to the second ground upon which the commission held the petition invalid. The record of the proceedings before the commission was not before the trial court, nor is it before us.

The trial judge in his opinion sets forth the reason for dismissing the complaint as follows:

"This action was commenced by the filing of a complaint (in mandamus) wherein the plaintiffs allege numerous errors and mistakes were committed by the Election Commission. There are no allegations therein charging that Commission or its members with fraud, arbitrary or capricious conduct. Plaintiffs pray that the findings of the Commission be reviewed by this Court.

"Motions to dismiss and to strike were filed on behalf of all defendants, and the matter is now before this Court on those motions.

"Mandamus is a discretionary writ. It lies where there

is a clear legal duty to perform a certain thing, or where there is shown an actual failure to perform that duty. It cannot be used to control discretion, nor to correct errors committed in the exercise of discretion, nor to compel a quasi-judicial tribunal to exercise its discretion in a particular way.

"The Election Commission is a quasi-judicial tribunal, empowered by Sec. 276 of the Charter of the City and County of Denver to hear and determine, upon protest, the sufficiency of the petitions referred to in the complaint. In accordance with said Sec. 276, the findings of the Election Commission as to the sufficiency of any petition shall not prevent the same being reviewed by any state court of general jurisdiction. Said Commission, after hearings, exercised its discretion, entered its written findings, and took all action required by law.

"This court is a court of review and not for trial de novo. The plaintiffs did not proceed in accordance with Rule 106 (4) Rules of Civil Procedure, and therefore the matter is not before the court for review. Accordingly, both motions to dismiss are sustained."

We believe that the trial court was justified in drawing the distinction between the writ of mandamus and Rule 106 (4) R.C.P. Not only was the complaint in this case entitled a complaint in the nature of mandamus, but paragraph 14 of the complaint definitely states "that the plaintiffs elect to proceed in a suit in mandamus"; and at the conclusion of paragraph 15 there is a prayer that the "Commission be ordered to certify to the clerk of the City Council that petition as a whole contains the genuine names of electors of more than five per cent. (5%) of the 70,280 votes for mayor at the general election of the City and County of Denver, held in May 1943." It should further be emphasized that before the court actually ordered the complaint dismissed, plaintiffs were given several opportunities to amend and seek review of the Election Commission's actions under Rule 106 (4) R.C.P. This case, therefore, is not comparable

with *Hawkins v. Hunt,* 113 Colo. 468, 160 P. (2d) 357, where we treated a complaint in mandamus as coming under Rule 106 (4) R.C.P., and disposed of the case accordingly. In the instant case counsel for plaintiffs definitely rejected their right to amend and proceed under Rule 106 (4) R.C.P.; consequently should we rule in this case that they were proceeding under that rule we would be forcing upon them a remedy which they have already refused in the trial court and which they here assert in written briefs and oral argument is inapplicable. We can only interpret the record, therefore, as one in which they insist that they have a right to what would correspond under the old pleadings to a writ of mandamus, which, as above indicated, would entitle them, if granted, to a new trial on the merits rather than to have a district court act as a court of review of the proceedings of the Election Commission.

It may be argued that special forms of writs, including mandamus, have been abolished under the first paragraph of Rule 106 R.C.P., and that any set of circumstances entitling a litigant to the issuance of such a writ would come under that rule. We have recently held, however, in *North Poudre Irrigation Co. v. Hinderlider,* 112 Colo. 467, 474, 150 P. (2d) 304: "While Rule 106, R.C.P. Colo., pertaining to remedial writs, abolishes the special form of pleading, writ and name of the remedy theretofore known as mandamus, the substantive aspects of such proceedings are preserved, and relief of the same nature as was formerly provided in mandamus actions may be granted in accordance with precedents established under the old practice."

Proceeding from that premise, it is clear that plaintiffs, as pointed out by the trial court, were not entitled to relief in mandamus which has its function in those cases where the duty of the public officer or board is purely ministerial and not discretionary. *People ex rel. v. Spruance,* 8 Colo. 307, 6 Pac. 831; *People ex rel. v. Stapleton,* 98 Colo. 354, 56 P. (2d) 931. In *Miller v.*

*Armstrong,* 84 Colo. 416, 270 Pac. 877, the secretary of state sustained a protest to a petition to initiate a repeal of the civil service amendment to the Colorado Constitution. We upheld the action of the district court in its position that it was a court of review and not a court for trial de novo.

Furthermore, in the instant case plaintiffs had a plain and adequate remedy at law without seeking mandamus, and this fact justified the trial court in its action dismissing the complaint, for we held in *People ex rel. v. Buckland,* 84 Colo. 240, 269 Pac. 15, that "Where there is by statute an adequate remedy by appeal, or otherwise, from an order of a public officer or a public board, mandamus should be refused." In that case a person aggrieved by an order of a high-school committee and principal of the school, sought mandamus at a time when the statute allowed appeals by the aggrieved person from an order of a school board or a high-school committee to the county superintendent of schools, and from his decision to the state board of education in all school matters of law or fact. Mr. Justice Campbell, speaking for the court, also said, "While mandamus under our code is a judicial action or proceeding of a civil character, it is not an ordinary action or proceeding available as matter of right. It is maintainable only when there is no other adequate legal remedy, and the courts are invested with a sound discretion as to its issuance." We have cited *People v. Buckland, supra,* in *School District v. Commissioners,* 85 Colo. 72, 273 Pac. 879; *Fanseleau v. Harker,* 85 Colo. 370, 275 Pac. 934; *Dines v. Harris,* 88 Colo. 22, 291 Pac. 1024; *Duncan v. People, ex rel.,* 89 Colo. 149, 299 Pac. 1060; *Hertz System v. Doak,* 94 Colo. 200, 29 P. (2d) 625; *Brownlow v. Wunch,* 102 Colo. 447, 80 P. (2d) 444. We also have approved the principle in *People ex rel. v. Bundy,* 107 Colo. 102, 111, 109 P. (2d) 261, where we said: "This circumstance constitutes a second basis for sustaining the demurrers against the writ, since mandamus, being an extraordinary writ, is

generally held not to lie where there is another specific remedy provided by statute or Constitution, and in election cases this applies to the availability of the remedy of contest. See, *State ex rel. Toon v. Thompson,* 204 Ind. 560, 185 N.E. 117; *Watson v. Gattis,* 188 Ark. 376, 65 S.W. (2d) 911; *Britt v. Board of Canvassers,* 172 N.C. 797, 90 S.E. 1005."

■ Our statements thus far apply to all the defendants. In addition to the city Election Commission, the defendants in this case are: the City and County of Denver, the Board of Councilmen of the City and County of Denver, and various officers of the Denver city and county administration. In respect to the latter, no definite or specific charge, whether of omission or commission, such as appears against the Election Commission, is made. There does not seem to be a semblance of a cause of action stated against them. For even assuming that their codefendant, the Election Commission, might have been subject to mandamus, that does not place them in the same category. As we said in *Board of Commissioners of Adams County v. Heath,* 79 Colo. 429, 246 Pac. 794: "We know of no rule whereby the delinquency of one officer in his duty can justify a mandate to another and innocent officer to perform a duty which he has not neglected even though the law requires such duty to follow the performance by the delinquent officer of his duty."

If it be argued that in the first six paragraphs of the complaint it is charged that the defendants are estopped from treating block 208, Denver, commonly known as the "Old Court House Square," as other than a public park, and that therefore this is a request for a mandate against the Denver officials, then it may be pointed out that in *Hall v. City and County of Denver,* 115 Colo. 538, 177 P. (2d) 234, where the first six paragraphs of the complaint are identical with the first six paragraphs of the complaint in the instant case, we specifically held

that block 208 in the City and County of Denver was not a public park.

The judgment is affirmed.

MR. JUSTICE HILLIARD dissents.

MR. JUSTICE HILLIARD dissenting.

This is another "wrong" decision, the effect of which is to further the purpose of rich and shrewd New York speculators, who, for a song, relatively considered, to be sung slowly over an interminable period, sans tax levies for the interim, and in which a few local speculators join in the chorus, are to acquire the people's brightest gem, their most resplendent diadem, the "Old Court House Square." I will have none of it, and, if I were able, would thwart it. If there shall be those who are interested in my views on the general subject, not assumed, they are stated at length in a dissenting opinion in a previous review between the same parties. *Hall v. Denver*, 115 Colo. 538, 550, 177 P. (2d) 234, 240.

Relative to the present inquiry, the people, proceeding directly by a petition to that end, and allegedly signed by more than the required number of electors, not denied, sought to have an election held for the purpose of securing a popular determination of the vital question involved, which, as I conceive, article XX, Constitution, and article XVII, Denver City Charter, authorize. By resort to technicalities, emphasized by top-flight lawyers in that interest, and employed in the court's opinion here as things of virtue, the speculators, those carrying the air not less than those supplying the overtones, once more have prevailed. Having used my best efforts to prevent what I regard as an outrageous result, without avail, I depart for the nonce from the line of judges and join the ranks of the embattled protestors.